## STATE EX REL. THOMPSON v. KENNEY, AUDITOR.

MANDAMUS—*Hearing of the application—Pleadings.*—Under section 575 of the Code of Civil Procedure, relating to writs of mandate, it is no ground for the refusal of a writ of mandate that certain specific facts alleged in the respondent's answer were not denied in the relator's replication, where the pleadings raised questions of law only, and where relator relied upon the facts alleged in his affidavit, and expressly admitted by respondent's answer, as ground for the relief which he prayed for.

MANDAMUS TO STATE AUDITOR—*Claims against the State.*—In an action for a writ of mandate brought by relator, a member of the legislative assembly, against the auditor of the State, to require him to audit and settle relator's claim against the State for his compensation and mileage as a member of the House of Representatives, and to issue him a certificate therefor, as provided in section 121, fifth division of the Compiled Statutes, where it was alleged in respondent's answer that another person held a certificate of election to the same office which relator claimed to be occupying, and it did not appear that a contest of the election of relator was pending in the house of which he claimed to be a member. *Held*, that upon sufficient *prima facie* evidence of relator's membership of the House of Representatives of this State he would be entitled to the relief asked for.

ELECTIONS—*Constitutional law—Certificate of election—Canvassing board.*—The act of Congress, approved February 2, 1889, enabling the people of Montana and other Territories to form and adopt State governments, provides in section 8 that: ". . . . At the elections provided for in this section the qualified voters of said proposed States shall vote directly for or against the proposed constitution. . . . . The returns of said elections shall be made to the secretary of each of said Territories, who, with the governor and chief justice thereof, or any two of them, shall canvass the same . . . ." Section 9 provides: ". . . . and until said State officers are elected and qualified under the provisions of each constitution, and the States, respectively, are admitted into the Union, the territorial officers shall continue to discharge the duties of their respective offices in each

of said Territories." Section 24 provides: "That the constitutional conven-
tions may, by ordinance, provide for the election of officers for full State govern-
ments, including members of the legislatures . . . . and all laws in force made
by said Territories, at the time of their admission into the Union, shall be in
force in said States, except as modified, or changed by this act or by the consti-
tutions of the States, respectively." Section 25 provides: "That all acts or
parts of acts in conflict with the provisions of this act, whether passed by the
legislatures of said Territories or by Congress, are hereby repealed." Section
xx., "Schedule," section 1, of the State constitution, provides that: "All laws
enacted by the legislative assembly of the Territory of Montana, and in force
at the time the State shall be admitted into the Union, and not inconsistent with
this constitution or the constitution or laws of the United States of America,
shall be and remain in full force as the laws of the State until altered or repealed,
or until they expire by their own limitation." The fifth paragraph of ordinance
II., referred to in section 17 of the "Schedule," and adopted with the constitu-
tion, requires that the returns of said elections for the adoption or rejection of
the constitution "shall be made to the secretary of the Territory, who, with the
governor and the chief justice of the Territory, or any two of them, shall consti-
tute a board of canvassers, who shall meet . . . . and canvass the votes so cast,
and declare the result." The eighth paragraph of the same ordinance provides
that the votes for all State officers, members of the legislative assembly, and dis-
trict judges, shall be returned and canvassed "in the same manner and by the
same board as is the vote upon the constitution." A statute of the Territory,
existing prior to the enabling act and prior to the adoption of the constitution,
provided that the canvass of the votes cast for members of the legislative assembly
should be made by the boards of county commissioners of the respective counties
in the Territory, and certificates of election issued by the clerk of the board of
county commissioners. *Held*, that this statute was in conflict with the said act
of Congress and the constitution of the State and did not remain in force after
the adoption thereof. *Held, also*, that the board of canvassers provided for in
the fifth paragraph of ordinance II., was the legally constituted canvassing
board to canvass the votes for members of the legislative assembly and to
declare the result. *Held, also*, that a certificate of election issued by said board
of canvassers was *prima facie* evidence of relator's membership in the House of
Representatives of this State.

ORDINANCE — *Force and effect as constitutional provision.* — An ordinance, framed
and adopted by the constitutional convention, and appended to the constitution,
and with it adopted by the people, has the same force and effect as a constitu-
tional provision.

SAME — *Effect upon statute.* — The effect of an ordinance upon the statute is to
change and modify its provisions so far as it is necessary to give the provisions
of the ordinance full scope and effect.

STATUTORY CONSTRUCTION — *Duty of auditor.* — The compensation of members of
the legislative assembly is fixed by law (Const. art. v. § 5) and the duty of the
State auditor as defined by section 121, fifth division of the Compiled Statutes,
is therefore not affected by the provisions of section 20, article vii. of the Con-
stitution, creating a board of examiners, and providing that "no claims against
the State, except salaries and compensation of officers fixed by law, shall be
passed upon by the legislative assembly without first having been considered
and acted upon by said board."

Original proceeding.    Application for writ of mandamus.

*E. D. Weed, McCutcheon & McIntyre,* and *S. A. Balliet,* for
relator.

The right to mandamus in the case presented is unquestioned. (*Fowler* v. *Peirce,* 2 Cal. 165; *State* v. *Weston,* 4 Neb. 216; *Thomas* v. *Owens,* 4 Md. 190.) If relator is entitled to compensation for services as claimed, the amount is fixed by law, and the auditor does not exercise judicial functions in auditing it. (Comp. Laws, p. 625, § 121; *Fowler* v. *Peirce, supra;* Const. art. v. § 5.) The constitutional convention was authorized by act of Congress, approved February 22, 1890, "to form State governments." (Sess. Laws, 16th Sess. § 4, p. 64.) It was also empowered to " provide for election of officers including legislative." (Sess. Laws, 16th Sess. § 24, p. 73.)

The act further provided " that all laws in force made by the Territory at the time of admission should be in force as laws of the State, except as modified and changed by this act or by the constitution. (Sess. Laws, 16th Sess. § 24, p. 73.) Prior to the adoption of the constitution, the county commissioners were the final canvassing board, so far as the election of members of the legislature was concerned, and hence the certificate mentioned in sections 1033 and 1325, fifth division, Compiled Statutes, emanated from that board, and was issued by the clerk thereof. (Comp. Stats. § 1033, p. 930.) The ordinance adopted by the constitutional convention changed this and made the governor, chief justice, and secretary of the Territory such final canvassing board, with power to declare the result. (Subds. 5, 8, Ordinance.) The house is judge of the election returns and qualifications of its members. (Const. art. v. § 9.) Its action under this provision of the constitution is judicial and final. (*People* v. *Mahaney,* 13 Mich. 491; *Flint & F. P. R. Co.* v. *Woodhull,* 25 Mich. 99; 12 Am. Rep. 233; *Illinois Cent. R. R.* v. *Wren,* 43 Ill. 77; *Bedard* v. *Hall,* 44 Ill. 91; *Grob* v. *Cushman,* 45 Ill. 119; *Rockford R. R. Co.* v. *Lynch,* 67 Ill. 149; Cooley's Constitutional Limitations [5th ed.], n. 1, p. 159.) It is the right and duty of the court to take judicial notice of the journal of the legislature. (*People* v. *Mahaney, supra.*) In all cases of this kind the law is " that where there has been an authorized election for the office in controversy, the certificate of election which is sanctioned by law or usage is the *prima facie* written title to the office, and can be set aside only by a contest in the forms prescribed by law." (*Kerr* v. *Trego,* 47 Pa. St. 292.

See discussion in *Re Sykes*, and especially argument of Senator
Saulsbury, 2 Cong. Rec. pt. 5, 43d Cong. 1st Sess. p. 4325, et
seq.; Argument Senator Morton, 2 Cong. Rec. pt. 5, 43d Cong.
1st Sess. p. 4287, et seq.; Argument Senator Hamilton, 2 Cong.
Rec. pt. 6, p. 323.)

*Henri J. Haskell,* Attorney-General, for the State, Respondent.

HARWOOD, J. — This action was commenced in this court on
the seventeenth day of January, A. D. 1890, by filing the re-
lator's affidavit, upon which he prayed for the issuance of a
writ of mandate directed to Edwin A. Kenney, auditor of the
State of Montana, commanding him to forthwith audit and settle
and issue relator a certificate for a certain alleged claim in favor
of relator against the State of Montana in the sum of three
hundred and thirty-nine dollars, for mileage and *per diem* for
attendance as a member of the House of Representatives of the
legislative assembly of the State of Montana.

The affidavit of the relator recites the following facts: "That
affiant, William Thompson, is over twenty-five years of age,
now is, and has been for more than twenty-five years last past,
a resident of the Territory and State of Montana, and for three
years last past has been a resident of the county of Silver Bow;
the said county being one of the representative districts of the
State of Montana. That at the election held in the Territory
of Montana on the first Tuesday of October, A. D. 1889, under
the provisions of an act of Congress entitled "An act to provide
for the division of Dakota into two States, and to enable the
people of North Dakota and South Dakota, Montana, and
Washington, to form State constitutions and State governments,
and be admitted into the Union on an equal footing with the
original States, and to make donations of public lands to such
States," approved February 22, 1889, and as further provided
for by the constitution, ordinances, and schedule framed by the
constitutional convention for the State of Montana, and adopted
by the people thereof, the relator, William Thompson, was a
candidate for election to the office of representative in the legisla-
tive assembly of the State of Montana from said representative
district, composed of the county of Silver Bow. That relator was

voted for at said election, and was elected to the office of representative from said district. That the returns of said election were made by the various judges of election in said district to the clerk of said Silver Bow County, and that fifteen days thereafter the chairman of the board of county commissioners of said Silver Bow County, taking to his assistance two officers of said county, canvassed the returns of said election, and declared the result thereof, so far as county officers were concerned; and that, so far as the members of the legislative assembly were concerned, the returns of said election were made to the secretary of the Territory of Montana. That, thirty days after said election, all votes for the members of the legislative assembly were canvassed by the governor, chief justice, and secretary of the Territory of Montana, who then and there found, ascertained, declared, and certified that the affiant, William Thompson, was duly elected to the House of Representatives of the legislative assembly of Montana as a member thereof; and that the said governor and secretary of the Territory of Montana delivered to affiant a certificate, over their hands and seal of said Territory, certifying and declaring that at such election aforesaid affiant had been elected a member of the House of Representatives of the said legislative assembly. That on the twenty-third day of November, A. D. 1889, at twelve o'clock noon, pursuant to the proclamation of the governor of Montana, the legislative assembly of the said State was convened, and affiant appeared at the capital of the State at that time, and in conjunction with twenty-nine other persons, who had, as aforesaid, been ascertained, declared, and certified by the aforesaid canvassing board, composed of the governor, secretary, and chief justice of the Territory of Montana, to have been elected from the various representative districts in said State, did meet as the House of Representatives of the State of Montana, at the capital of said State, and in the place by them and the auditor of said State agreed upon, of which place of meeting previous public notice had been given. That then and there, in a room provided for that purpose, the relator and said twenty-nine other persons convened, and were called to order by the auditor of the State of Montana, and thereupon the said thirty members proceeded to qualify and organize the House of Representatives of the legislative assembly of the State of Mon-

tana, by the election of Aaron C. Witter, one of said members, as speaker of the House of Representatives, and Benjamin Webster as chief clerk thereof.  That such proceedings were then and there had by the members of said house as that a committee thereof was appointed on credentials, to which committee the said thirty members presented severally a certificate signed by the governor and secretary of Montana, and over the seal of the Territory of Montana, certifying and declaring that each of them had been duly elected members of the House of Representatives of the legislative assembly of the State of Montana. That said committee on credentials then and there reported to the said house that the said thirty members aforesaid, including affiant, were duly elected members of the House of Representatives of the legislative assembly of the State of Montana, and entitled to seats therein, which said report was approved and adopted by the said house. That thereafter the said house continued to sit from day to day, from that date, to wit, November 23, A. D. 1889, to the date of the signing of affiant's affidavit, to wit, January 16, A. D. 1890; and that affiant has attended said sessions, from that time until the date of making this affidavit, as a member of said House of Representatives, except on the thirteenth day of January, A. D. 1890. That affiant traveled the distance of seventy-five miles in going by the nearest usually traveled route from his residence to the capital of said State to attend said legislative assembly. That on the said twenty-third day of November, A. D. 1889, the affiant and all of the said twenty-nine members took the oath prescribed by the constitution of the State of Montana as members of the legislative assembly of the State of Montana, and that the said thirty members have attended upon the various sessions of the said house. That on the sixteenth day of January, A. D. 1890, affiant presented to Edwin A. Kenney, who was then the auditor of the State of Montana, at his office, an account against the State for his services and attendance as a member of the house aforesaid, at the rate of six dollars per day, and for mileage at the rate of twenty cents per mile for the distance traveled as aforesaid, as provided by law, and requested the said auditor to audit and settle the said claim, and give affiant a certificate thereof; but to audit and settle said claim, or give affiant a certificate thereof,

or any part thereof, the said auditor did then and there refuse, nor would the said auditor approve said claim, or any part thereof." To which affidavit affiant attaches an account as "Exhibit A," which he verifies as a copy of the said account presented to said auditor, and referred to in his affidavit.

Upon this showing an alternative writ of mandate was issued out of this court requiring the said Edwin A. Kenney, auditor of the State of Montana, to forthwith audit and settle said claim against the treasury of the State of Montana, and give to said William Thompson a certificate thereof, or to show cause before this court at ten o'clock A. M., January 20, A. D. 1890, why he had not done so. To this process the respondent made his verified answer, wherein he expressly admitted in detail all the affirmative allegations set forth in the relator's affidavit; but in addition to such express admissions the respondent alleged other matters as follows: "Defendant further says, that in the county of Silver Bow, which is a representative district, ten persons were apportioned to be elected members of the House of Representatives. That as to the election of five of said persons no controversy has arisen; but as to the said relator, and four of his colleagues sitting with him in the house aforesaid, a controversy as to their election has arisen; and unless they are *prima facie* members of such house, and entitled to act therein, no quorum has been present in said house, and the organization thereof has been without legislative validity. That the said house is composed of thirty members, whose muniment of title is the ascertainment, declaration, and certificate of the canvassing board, consisting of the governor, chief justice, and secretary of the Territory of Montana, as provided in ordinance No. II. passed by the constitutional convention of the State of Montana. That on the twenty-third day of November, A. D. 1889, twenty-four persons, from various representative districts in the State of Montana, who had been ascertained and declared to have been elected members of said House of Representatives by the governor, chief justice, and secretary aforesaid, under said ordinance of the constitution, did meet at another place in the capital of said State, and five members from the county of Silver Bow, one of whom assumed to have been elected in lieu of relator, met with said members last aforesaid, and having been

declared not elected by the said canvassing board, provided for in said ordinance, did nevertheless assume to be members of the House of Representatives, and did then and there present, as their muniment of title to said office, each a certificate signed by the county clerk and recorder of Silver Bow County, over his seal, certifying and declaring that such person was elected one of the representatives of the district of Silver Bow County, as representative in said house." To the foregoing new matter, set forth by respondent, the relator filed his replication as follows: *First*, the relator "denies that any controversy has arisen as to his election and the election of four of his colleagues from the county of Silver Bow, as set forth in said answer; *second*, avers that at the time the said house was organized, and when said house passed upon the report of the committee on credentials, as set forth in relator's application, a quorum of said house was present, and acted therein." The parties rested their case upon the allegations, admissions, and denials in the pleadings above set forth, and upon the questions raised therein the case was argued, and submitted to the court for decision.

At the commencement of the consideration of the questions involved herein it is proper to notice the scope and effect of the relator's replication. He denies therein "that any controversy has arisen as to his election, and the election of four of his colleagues;" but he does not deny the further facts set out in respondent's answer. Those specific facts alleged stand unchallenged, and were urged upon the consideration of the court as ground for the refusal on the part of the respondent to audit and settle relator's claim, and to grant him a certificate thereof, as provided by law. The relator relied upon the facts alleged in his affidavit, expressly admitted by respondent's answer, as grounds for the relief which he prayed for. The effect of these pleadings raised questions of law only. No issues of fact were made upon which evidence could properly be introduced. The denial made by the relator's replication was nothing more than a denial of an immaterial allegation. Compiled Statutes Montana, section 575 of the Code of Civil Procedure, relating to writs of mandate, provides as follows: "If no answer be made, the case must be heard on the papers of the applicant. If the answer raises only questions of law, or puts in issue immaterial

statements, not affecting the substantial rights of the parties, the court must proceed to hear, or fix a day for hearing the argument of the case."

This court is given original jurisdiction to hear and determine actions of this character by section 3, article viii. of the Constitution of Montana, as follows: "The appellate jurisdiction of the Supreme Court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law. Said court shall have power, in its discretion, to issue and hear and determine writs of habeas corpus, mandamus, *quo warranto, certiorari,* prohibition, and injunction, and such other original and remedial writs as may be necessary and proper to the complete exercise of its appellate jurisdiction." In referance to the office of the writ of mandamus, the Compiled Statutes of Montana (§§ 566, 567, Code Civ. Proc.) provide as follows: "Sec. 566. It may be issued by any court in this State, except a justice's, probate, or mayor's court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person." "Sec. 567. The writ shall be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It shall be issued upon affidavit on the application of the party beneficially interested."

It must now be determined whether or not the act, the performance of which is here sought to be compelled, is one which the law especially enjoins upon the respondent as a duty resulting from his office as auditor of this State. This involves two propositions: *First.* Is the relator entitled, upon the facts shown, to have his said claim audited and settled, and to receive a certificate thereof? *Secondly.* Does the law enjoin upon the State auditor the duty of auditing and settling said claim, and issuing to relator a certificate thereof? These propositions will be considered in the order stated.

To the high office of legislator, and to persons occupying that office, the law guaranties certain rights, privileges, and emolu-

ments, which courts of justice will regard and enforce in proper cases and upon proper showing. (Const. Mont. art. v. §§ 5, 15; 1 Blackst. Com. 164, and notes and cases cited; Cush. Law & Pr. Leg. Assem. §§ 546–597, inclusive; Cooley's Constitutional Limitations, 162, 163; Jefferson's Manual; Robert's Manual; 1 Kent Com. 235.) But in passing upon a question of this character, relating to a person claiming to be a member of the legislative assembly of the State, this court is mindful of the constitutional provision which places the power to try the ultimate right to the office in another forum, i. e., in the legislative house wherein the person claims a seat. (Const. Mont. art. v. § 9.) That body, and that alone, having the plenary jurisdiction to try the ultimate right to the office, it must be determined in the case at bar on what character of *prima facie* evidence will courts of justice enforce collateral or incidental rights and privileges belonging to the members of the legislative assembly; in other words, as applicable to this case at bar, what constitutes in the view of courts of justice sufficient *prima facie* evidence of his membership in the House of Representatives of this State to entitle the relator to the relief which he asks; that is, to have his claim to the emoluments of the office of representatives from Silver Bow County audited, settled, and certified. Under our republican form of government, election to this office is made by the votes of the legally qualified electors of the district in the manner prescribed by law, and the result of such election is ascertained in a manner prescribed by law, through the returns and canvass of such votes by legally constituted canvassing boards. The courts have uniformly given credit to the result of an election as ascertained and declared or certified by the legally constituted canvassing board, to whom the law has committed the duty of canvassing the returns of the election, and declaring the result, until this evidence of the election has been overborne by the trial and determination of the ultimate right to such office by the tribunal having jurisdiction to try and determine the same. (*Crowell* v. *Lambert,* 10 Minn. 369; *State* v. *Churchill,* 15 Minn. 455; *State* v. *Sherwood,* 15 Minn. 221; 2 Am Rep. 116; *People* v. *Miller,* 16 Mich. 56; *Swinburn* v. *Smith,* 15 W. Va. 483; *Hulseman* v. *Rems,* 41 Pa. St. 396; *Kerr* v. *Trego,* 47 Pa. St. 292; *Commonw.* v. *Baxter,* 35 Pa. St.

263; *De Armond* v. *State ex rel. Campbell*, 40 Ind. 469; *Hadley* v. *City of Albany*, 33 N. Y. 603; 88 Am. Dec. 412.) This is not only the rule governing the action of courts, but it is the practice adopted in the organization of legislative bodies, and admitting members thereto, until the *prima facie* evidence contained in the certificate of election issued by the legally constituted canvassing board is set aside by the proper authority in the determination of a contested election. (Cush. Law & Pr. Leg. Assem. §§ 141, 142, and 229–241, inclusive.) The authorities reviewed and cited by this eminent author amply show the practice upon this question. (McCrary on Elections, §§ 270–285, inclusive, and cases cited; Jefferson's Manual [12th ed.], 390.)

In the case at bar it is asserted, and not denied, that another person holds a certificate of election to the same office which the relator claims to be occupying, issued by the county clerk of Silver Bow County. It therefore becomes necessary, in the determination of this case, to ascertain what board or person is by law authorized to canvass the returns of the election in question, and ascertain and certify the result, so as to entitle the person holding that muniment of title to the office, *prima facie*, to maintain his case in an action of this character. If the right of relator to the certificate of election which he holds is challenged, let the question be raised and determined in the proper forum; but if the legislative body of which the relator claims to be a member, vested, as it is, with the powers which the constitution of this State has committed to it, and in view of the long line of precedents which have guided the action of such bodies in like cases, does not determine a controversy as to the election of the relator, then, in the nature of the case, there exists no better evidence of his right to relief than the finding or certificate of the legally constituted canvassing board, charged with the duty of ascertaining the result of the election in question. The title to an elective office, in a large majority of cases, rests on this *prima facie* evidence, because in the great majority of cases there is no adjudication of the right to the office which inquires back of the returns of the proper canvassing board. It is proper to observe here that under well-established rules of law, if it was shown that a contest of the election of the relator

was pending in the house of which he claims to be a member, and to which he holds a certificate of election, then this court would withhold judgment until the case was determined; but no such fact appears. The relator's certificate of election emanates from a canvassing board composed of the governor, chief justice, and secretary of Montana Territory, accredited by the signatures of the said governor and secretary and the seal of the Territory. The other certificate, which is set up in opposition to this, as held by another person, emanates from the county clerk of Silver Bow County, accredited under the hand and official seal of that officer. In the absence of any mention of this latter certificate, the consideration of this case necessarily involves the question as to whether the relator's certificate of election issues from the legally constituted canvassing board, charged with the duty of ascertaining, from the returns, the election of members of the House of Representatives. The *prima facie* right to relief rests upon the credentials, with the facts of service.

The act of Congress above mentioned, enabling the people of Montana and other Territories to form and adopt constitutions and set up State governments, provides in section 8 as follows: "At the elections provided for in this section, the qualified voters of said proposed States shall vote directly for or against the proposed constitutions, and for or against any articles or propositions separately submitted. The returns of said elections shall be made to the secretary of each of said Territories, who, with the governor and chief justice thereof, or any two of them, shall canvass the same." Section 9 of the same act provides as follows: "That until the next general census, or until otherwise provided by law, said States shall be entitled to one representative in the House of Representatives of the United States, except South Dakota, which shall be entitled to two; and the representatives to the fifty-first Congress, together with the governors and other State officers provided for in said constitutions, may be elected on the same day of the election for the ratification or rejection of the constitutions; and until said State officers are elected and qualified under the provisions of each constitution, and the States respectively are admitted into the Union, the territorial officers shall continue to discharge the duties of their

respective offices in each of said Territories." Section 24 of the same act provides as follows: "That the constitutional conventions may, by ordinance, provide for the election of officers for full State governments, including members of the legislatures and representatives in the fifty-first Congress; but said State governments shall remain in abeyance until the States shall be admitted into the Union, respectively, as provided in this act. In case the constitutions of any of said proposed States shall be ratified by the people, but not otherwise, the legislature thereof may assemble, organize, and elect two senators of the United States; and the governor and secretary of State of such proposed State shall certify the election of the senators and representatives in the manner required by law; and when such State is admitted into the Union the senators and representatives shall be entitled to be admitted to seats in Congress, and to all the rights and privileges of senators and representatives of other States in the Congress of the United States; and the officers of the State governments, formed in pursuance of said constitutions, as provided by the constitutional conventions, shall proceed to exercise all the functions of such State officers; and all laws in force made by said Territories at the time of their admission into the Union shall be in force in said States, except as modified or changed by this act, or by the constitutions of the States, respectively." Section 25 of the same act provides as follows: "That all acts or parts of acts in conflict with the provisions of this act, whether passed by the legislatures of said Territories or by Congress, are hereby repealed."

Having reviewed these provisions of the enabling act of Congress, we will proceed to the constitution of Montana, and consider its provisions upon this subject. Section xx., "Schedule," section 1, provides as follows: "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted into the Union, and not inconsistent with this constitution or the constitution or laws of the the United States of America, shall be and remain in full force. as the laws of the State until altered or repealed, or until they expire by their own limitations." Section 17 of the Schedule in the State constitution provides as follows: "All territorial, county, and township officers now occupying their respective

positions under the laws of the Territory of Montana, or of the United States of America, shall continue and remain in their respective official positions, and perform the duties thereof, as now provided by law, after the State is admitted into the Union, and shall be considered State officers until their successors in office shall be duly elected and qualified, as provided by ordinance, notwithstanding any inconsistent provisions in this constitution, and shall be entitled to the same compensation for their services as is now established by law; *provided,* that the compensation for justices of the Supreme Court, governor, and secretary of the Territory shall be paid by the State of Montana." Passing to ordinance No. II., referred to in the last above-quoted section, ordained and promulgated by the constitutional convention, with the constitution of the State, and adopted by the people, we find provisions as follows: "*First.* That an election shall be held throughout the Territory of Montana on the first Tuesday of October, A. D. 1889, for the ratification or rejection of the constitution framed and adopted by this convention." "*Fifth.* The votes cast at said election for the adoption or rejection of said constitution shall be canvassed by the canvassing boards of the respective counties not later than fifteen days after said election, or sooner, if the returns from all the precincts shall have been received, and in the manner prescribed by the laws of the Territory of Montana for canvassing the votes at the general election in said Territory; and the returns of said election shall be made to the secretary of the Territory, who, with the governor and the chief justice of the Territory, or any two of them, shall constitute a board of canvassers, who shall meet at the office of the secretary of the Territory on or before the thirtieth day after the election, and canvass the votes so cast, and declare the result. *Sixth.* That on the first Tuesday in October, A. D. 1889, there shall be elected by the qualified electors of Montana, a governor, a lieutenant-governor, a secretary of State, an attorney-general, a State auditor, a superintendent of public instruction, one chief justice and two associate justices of the Supreme Court, a judge for each judicial district established by this constitution, a clerk of the Supreme Court and a clerk of the District Court in and for each county of the State, and the members of the legislative

assembly provided for in this constitution. The terms of the officers so elected shall begin when the State shall be admitted into the Union, and shall end on the first Monday in January, A. D. 1893, except as otherwise provided. *Seventh.* There shall be elected at the same time one representative in the fifty-first Congress of the United States. *Eighth.* The votes for the above officers shall be returned and canvassed as is provided by law, and returns shall be made to the secretary of the Territory and canvassed in the same manner, and by the same board, as is the vote upon the constitution, except as to clerk of the District Court."

It is clear that said act of Congress, legislating for the people of the Territory of Montana, supplemented and carried out by the constitution and ordinances framed and promulgated by the constitutional convention, and ratified by the people of the Territory, covered the whole question as to what board should canvass the votes cast at the late election, both for and against the constitution, and for members of the legislative assembly and State and district officers, and declare the result. The fifth paragraph of ordinance II., above quoted, requires that the returns of said election for the adoption or rejection of the constitution "shall be made to the secretary of the Territory, who, with the governor and the chief justice of the Territory, or any two of them, shall constitute a board of canvassers, who shall meet at the office of the secretary of the Territory on or before the thirtieth day after election, and canvass the votes so cast, and declare the result." The eighth paragraph of the same ordinance provides "that the votes for all the State officers, members of the legislative assembly, and district judges shall be returned and canvassed in the same manner, and by the same board, as is the vote upon the constitution."

It is contended by the respondent that a statute of the Territory of Montana, existing prior to the said act of Congress, and prior to the adoption of the constitution, provided contrary to the act of Congress and the constitution and ordinances above quoted, in that this statute provides that the canvass of the votes cast for members of the legislative assembly shall be made by the boards of county commissioners of the respective counties in the Territory, and certificates of election shall be issued by the

clerk of the board of county commissioners. (Comp. Stats. § 1033, p. 930.) This position is untenable. There are no statutes of the Territory of Montana brought over and adopted by the people of this State contrary or in conflict with the constitution thereof, for this plain reason: It is provided by the act of Congress above quoted, enabling the people of said Territory to form a constitution and State government, that "all laws in force, made by said Territories at the time of their admission into the Union, shall be in force in said States, *except as modified or changed by this act, or by the constitutions of the States, respectively.*" (Act of Congress, *supra.*) This provision was further amplified by section 1 of section xx., "Schedule," of the constitution of Montana, in these terms: "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted into the Union, and not inconsistent with this constitution, or the constitution or laws of the United States of America, shall be and remain in full force as the laws of the State until altered or repealed, or until they expire by their own limitation." By these provisions the statute law of Montana Territory is remoulded at once to join in harmony with the State constitution. An example of this modification or remoulding of the statute law to harmonize with the constitution is found in reference to the formation of the grand jury. The express letter of the statute as in force up to the time the State was admitted into the Union provided that this body should consist of sixteen persons in number, of whom twelve could find an indictment. The State constitution provides that the grand jury shall consist of seven persons, of whom five are competent to find an indictment. It has been abundantly proved, by the act of Congress and the State constitution, that the statute is in force as modified by the constitution; and it cannot be maintained, either as a logical or reasonable conclusion, that there is a conflict, where the latter and paramount organic law has expressly adopted the former statute law as modified by the constitution. (*State* v. *Ah Jim*, 9 Mont. 167.)

Counsel for respondent, in this connection, contends that the ordinances framed by the constitutional convention, and appended to the constitution, were not a part of that instrument, and did

not have the force and effect of constitutional provisions. That for this reason the provisions of the ordinance declaring that the governor, chief justice, and secretary of Montana should constitute a canvassing board to canvass the votes and declare the result of the election of members of the legislative assembly, was impotent to work a change or modification of the statute providing that the certificates of election of such members shall be issued by the county clerk. Hence that statute stands in full force, and the county clerk's certificate is the best *prima facie* evidence of a party's right to a seat in the legislative assembly. No authorities have been brought to the attention of the court to sustain the respondent's position in respect to ordinances framed and promulgated by constitutional conventions. It appears this question was raised in the case of *Stewart* v. *Crosby,* 15 Tex. 546, wherein Justice Wheeler, in passing upon this point, says: "We think it free from doubt that the ordinance appended to the constitution is a part of the fundamental law of the land. Having been framed by the convention that framed the constitution of the State, and adopted by the convention and the people, along with the constitution, it is of equal authority and binding force upon the executive, legislative, and judicial departments of the government of the State as if it had been incorporated in the constitution, forming a component part of it." The case cited appears to have involved questions of great importance, as shown by the remarks of the judge at the commencement of the opinion, as follows: "In the argument of this case, questions of great moment to the parties, involving an inquiry respecting the constitutionality of the legislative enactments which they have invoked, and on which they rely to maintain their claims, have been discussed." Mr. Paine, in his work on Elections, section 294, announces the same doctrine, as does the case of *Stewart* v. *Crosby, supra,* in the following terms: "To launch a new constitution, certain machinery and arrangements are always necessary, which, having subserved this single purpose, are of no further use. These might, of course, be provided in the constitution itself, but to incorporate temporary provisions into the body of a permanent constitution would be to encumber the instrument with matter which might more properly be excluded from the text of the

constitution, and placed in such a form as to be dropped when all the uses for which it was provided have been fully subserved. Accordingly, these provisions for inaugurating new State constitutions usually take the form of detached ordinances or schedules. The validity and effect of these provisions are precisely the same, whether they are placed in the ordinance or schedule, to be thrown aside when no longer needed, or imbedded in the text of the constitution, to remain a permanent blemish after the accomplishment of all the purposes for which they were required. It is clearly competent for a constitutional convention, by an ordinance or schedule, to change the time for holding the general election of the State. . . . . The people of the State, in their constitutional conventions, are always their own masters. There is nothing to restrain them from giving whatever form they prefer to its organic law, except the constitution of the United States, and treaties made and laws enacted by the United States in pursuance thereof."

To declare that the county clerk's certificate of election to the office in question is the highest *prima facie* evidence of title to the office, as against the certificate of the canvassing board constituted by the act of Congress, and the ordinance framed by the constitutional convention and adopted by the people, would be, in effect, to declare that the provisions of the statute in this respect stand without modification by the act of Congress and constitution and ordinances, and prevail over them. If the ordinance did not work a change in the statute in this particular, how can it be maintained that the same ordinance worked such important changes in other respects? The effect of ordinance No. II. was to terminate the terms of all the elective officers of the Territory of Montana, while under the literal statutory provisions their terms of office would have continued for more than a year. And under that theory the officers elected at the late election, under this ordinance, who have taken possession of these offices, are there without authority. The logical analogies of this theory need not be further traced. It destroys itself by its inherent fallacy, without the force of the authorities above quoted to the contrary. The constitutional convention was authorized, by act of Congress, to make provision, "by ordinance," for the election of officers for full State government.

In the body of the constitution, at section xvii., "Schedule," the State officers to be "duly elected and qualified, as provided by ordinance," are referred to. The ordinance was framed and adopted by the convention, promulgated to the people, and by them ratified. The provisions of the constitution and ordinance relating to carrying out the election, to set in motion the State government, was intended for execution within a short time after the constitution was framed. The plain intent of the convention when framing ordinance No. II. is shown in the provision dividing the State, legislative, and district officers into one class, and directing that the returns of the election of these officers should be made to the secretary of the Territory, and canvassed in the same manner and by the same board as the vote upon the constitution; and in the ninth paragraph of that ordinance the election of the county and township officers was provided for; and the tenth paragraph provides that the votes for the above county and township officers, and for clerk of the District Court, shall be returned and canvassed as is now provided by law. The effect of the ordinances upon the statute is to change and modify its provisions so far as is necessary to give the provisions of the ordinance full scope and effect. It follows that the relator's certificate of election emanates from the legally constituted canvassing board, and will be admitted in this action as *prima facie* evidence of his election to the office in question.

The facts of attendance upon the sessions of the house, and as to distance traveled, are asserted by the affidavit of the relator, and admitted by the verified answer of respondent. No question has been raised upon these matters set forth in relator's affidavit. The constitution of the State fixes the amount of compensation at six dollars for each day's attendance, and twenty cents per mile for each mile necessarily traveled, by the nearest usually traveled route, in going to the seat of government from the member's residence, and returning thereto; and the relator's claim conforms to these prescribed rates.

It remains to be determined whether the law enjoins upon the State auditor the duty of auditing and settling said claim, and issuing to the relator a certificate thereof. Section 121, fifth division, Compiled Statutes, provides as follow: "He shall audit all claims against the treasury, and when the law recognizes a

claim, but no appropriation has been made therefor, shall settle the claim, and give the claimant a certificate thereof, and report the same to the legislative assembly." This provision of the statutes should be considered in connection with section 20 of article vii. of the State Constitution, which section provides as follows: "Sec. 20. The governor, secretary of State, and attorney-general shall constitute a board of state-prison commissioners, which board shall have such supervision of all matters connected with the State prisons as may be prescribed by law. They shall constitute a board of examiners, with power to examine all claims against the State, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law. And no claim against the State, except for salaries and compensation of officers fixed by law, shall be passed upon by the legislative assembly without first having been considered and acted upon by said board." The section of the statute above quoted provides that the auditor "shall audit all claims against the treasury; and when the law recognizes a claim, but no appropriation has been made therefor, shall settle the claim, and give the claimant a certificate thereof, and report the same to the legislative assembly." The constitution has created a board of examiners, with power to examine all claims against the State, except salaries or compensation of officers fixed by law; and provides that "no claims against the State, except for salaries and compensation of officers fixed by law, shall be passed upon by the legislative assembly without first having been considered and acted upon by said board." The salaries or compensation of officers fixed by law being expressly, in all cases, excepted by the provisions of the constitution from the action of said board of examiners, the duty of the State auditor, under the statute, is clear as to the relator's claims. No other class of claims against the State is presented in this action than the compensation of an officer fixed by law. However, it is deemed proper to consider the statutory and constitutional provision together, so that no misapprehension will arise as to the decision herein. The relator asks that his claim against the State for compensation for service as a member of the House of Representatives of the legislative assembly of this State, for the fifty-four days' attendance at the session of that

body, together with mileage for seventy-five miles traveled, by the nearest usually traveled route, from his residence to that assembly, at the rate fixed by law, amounting to three hundred and thirty-nine dollars, be audited and settled, and that a certificate thereof be given him by the respondent, Edwin A. Kenney, auditor of the State of Montana.   Under the provisions of law and the showing in this action, it is held by this court that the relator is entitled to the relief prayed for; that the relief prayed for is a duty specially enjoined upon the State auditor, as resulting from his office; that the writ of mandamus is the proper remedy herein.   Wherefore it is ordered that a peremptory writ of mandate be issued in the form provided by law, as prayed for in relator's affidavit.

DE WITT, J., concurs.

Chief Justice BLAKE, having been a member of the canvassing board mentioned in the above opinion, did not sit in the hearing and the determination of this action.