## BRYAN CALLAGHAN ET AL. v. W. G. TOBIN.

### Decided November 1, 1905.

**1.—Incumbent of Public Office—Threats to Oust—Injunction.**

Title to an office can not be tried through the medium of an injunction, but the remedy by injunction can be invoked to protect the possession even of officers de facto against the acts of intruders on such possession.

**2.—Tenure of Office—Charter Construed.**

The charter of the city of San Antonio provides that the police and fire departments of the city shall be controlled by a board of civil service commissioners, "and all persons selected by said board to serve as policemen or firemen shall hold their positions during good behavior, and shall not be discharged for political reasons, and in no event except for good cause, and after charges have been filed and due hearing had thereon." Held, it will not be supposed the Legislature intended to violate the provisions of the Constitution, and by the expression "during good behavior" the Legislature did not mean good behavior during life, but good behavior during the constitutional term of two years.

**3.—Charter Construed—Provisions Reconciled.**

By certain sections of the city charter it is provided that any appointive officer, employe, agent or servant of the city employed under the authority of the council may be discharged from service by the mayor for any reason he may deem sufficient, and the council is given the care, management and control of the city and its property, and the authority to establish a police force and regulate the same, and to establish, regulate and maintain a fire department. By another section the charge, management and control of the police and fire departments and the selection, management, control and discharge of the appointees therein is given to the board of civil service commissioners. Held, there is no conflict in the grant of powers.

**4.—Money Value of Office—Jurisdiction of District Courts.**

Under the Constitution of Texas District Courts have the power and authority to issue writs of injunction in all cases, irrespective of the amount in controversy, in which courts of chancery could have issued them under the rules of equity jurisprudence.

**4.—Term of Office—Until Successor Qualifies.**

The Constitution fixes the duration of all offices, not otherwise fixed by it, at two years; but it also provides that "all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified."

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Jos. Ryan, Houston Bros.* and *R. J. Boyle,* for appellants.—Where a claim of office is asserted, injunction is not the proper remedy to secure or retain possession of the office and the custody and control of the property incident thereto, because an adequate remedy is afforded at law in the proceedings of quo warranto or mandamus.

Jurisdiction does not lie in the District Court to try title to an office where the money value of the office is less than five hundred dollars. This is the rule under our laws, whether such trial to the right of office be by injunction or other procedure.

The court erred in rendering judgment herein in favor of plaintiff because the evidence in this case shows that plaintiff was appointed to

the office of chief of the fire department of the city of San Antonio by the mayor of said city on March 11, 1903, and that his constitutional term of office as such expired long prior to the institution of this suit and that he had never been reappointed to said office and is not, therefore authorized or empowered to maintain himself and can not therefore be vested with title to said office or perpetuated therein by the decree of the court.

The court erred in rendering judgment in favor of plaintiff herein ·because the evidence shows that the commission under which plaintiff is holding office as fire chief of the city of San Antonio and was so holding at the time of the institution of this suit had expired long prior to the institution of this suit, and that plaintiff had not and could not have any right, property or interest in the office of chief of the fire department of the city of San Antonio.

*Ogden & Brooks, Wm. Aubrey, L. G. Denman, H. C. Carter* and *John H. Clark,* for. appellee.—It is the right and duty of a public officer to protect the property of the office, and when necessary he may have injunction. Caruthers v. Harnett, 67 Texas, 127.

Where one is lawfully in possession of an office injunction is the proper remedy to prevent an intruder from taking possesson of the office and property pertaining thereto, and inquiry can be made into the authority of the body attempting to make an appointment under such proceeding. Ehlinger v. Rankin, 29 S. W. Rep., 240; Brumby v. Boyd, 66 S. W. Rep., 874; State Const., sec. 17, art. 16, and sec. 19, art. 1; Kimbrough v. Barnett, 93 Texas, 310; Terrell v. Green, 88 Texas, 543; Peterson v. Smith, 69 S. W. Rep., 542; Anderson Co. v. Kennedy, 58 Texas, 622; Mayor of Baltimore v. State (Md.), 74 Am. Dec., 572; Biencourt v. Parker, 27 Texas, 558; Franco Texas Land Co. v. Laigle, 59 Texas, 344; Galveston Ry. v. Galveston, 90 Texas, 411.

Injunction will issue in many cases where there is a legal remedy. Rev. Stats., 2989; 87 Texas, 330; 73 S. W. Rep., 83; 63 Texas, 223; Ib., 349; 91 Texas, 129; 69 S. W. Rep., 543.

After officer removed without authority he may be restored by mandamus. Johnson v. Galveston, 33 S. W. Rep., 151.

It is to the interest of the public that the office be filled. McAllen v. Rhodes, 65 Texas, 353.

The Legislature had the power to create the commission. Brown v. City of Galveston, 97 Texas, 1.

The commission having been properly provided for and established, it is valid with all its powers, and if an unlawful privilege is attempted to be given to one of its appointees the vice does not reach the heart and main purpose of the act and the vice alone will be discarded. Charter of the city, special laws 1903, p. 322, and especially sections 34a and 17; City of Houston v. Estes, 79 S. W. Rep., 850; Proctor v. Blackburn, 67 S. W. Rep., 548; Cawthorn v. City of Houston, 71 S. W. Rep., 329.

The city council only has such authority as is specially delegated to it. City of Cleburne v. Gulf, C. & S. F. Ry., 66 Texas, 461; Brenham v. Water Works, 67 Texas, 542.

A de facto officer may have injunction to protect his possession. Spelling on Injunction, vol. 1, p. 516, sec. 621, and cases cited; Beach on Injunction, sec. 1380, and cases cited; Guillotte v. Poincy (La.), 5 L. R. A., 403; Poyntz v. Shackleford (Ky.), 54 S. W. Rep., 855; Priddie v. Thompson, 82 Fed. Rep., 191; Butler v. White, 83 Fed. Rep., 589; Equity as applied by Simkins, pp. 479 and 480.

FLY, ASSOCIATE JUSTICE.—On May 31, 1905, appellee filed a petition in the District Court of Bexar County, in which it was alleged, in substance, that he was the chief of the fire department of the city of San Antonio, through and by virtue of an appointment made by the mayor on March 11, 1903, and an election on same date by the city council of said city, that his salary had been fixed at $150 a month, that he had been commissioned on March 13, 1903, and duly qualified as fire chief and had ever since been acting in such capacity and has in possession the records, books, papers and property of the fire department and has control of the subordinates therein. That under the provisions of the present charter which became effective on July 29, 1903, the chief of the fire department, and other officers, and all persons serving in said department shall hold their offices until their successors shall be appointed and qualify. That the existing city charter provides that the police and fire departments of said city shall be placed under service rules and be controlled by a board of three civil service commissioners, to be known as the police and fire commission, and that such board should have the management and control of the police and fire departments and the power of selection, management, control and discharge of all persons in said departments, and that in accordance with the provisions of section 34a of the city charter the mayor had appointed three members of said board and their appointment had been confirmed by the city council and commissions issued to them. That the commissioners would on June 1, 1905, qualify and enter upon the discharge of their duties as police and fire commissioners and would have the sole and absolute right and authority to appoint the fire chief and all members of the fire department and have the care, management and control of said department. That on May 9, 1905, Bryan Callaghan was elected mayor of the city of San Antonio, and William L. Richter, B. J. Mauermann, John Bauer and J. T. Hambleton were elected aldermen at large and J. R. Lambert, Eli Arnaud, Erich Menger, Sr., M. W. Davis, A. I. Lockwood, C. S. Robinson, Ed Braden and Emil Kuehn were elected aldermen of their respective wards, and that said mayor and aldermen would qualify and enter upon the discharge of their duties on June 1, 1905. That they were contending and claiming that the provisions of section 34a, providing for the police and fire commission, are invalid, and that the power to appoint a fire chief and members of that department was vested in the mayor and city council, and that they were threatening to qualify immediately after midnight on June 1, 1905, and appoint and confirm appellant Phil T. Wright, or some other person, as chief of the fire department and other persons to other positions in the fire department and to seize and take from appellee the property belonging

to said department and to oust appellee from the office of chief of the fire department and deprive him of the control and management of the persons serving in said department and repeal the ordinances establishing the fire department and providing for the maintenance thereof. An injunction was prayed for to restrain the mayor and city council from the action threatened by them. A temporary writ of injunction was granted and the case set down for a hearing.

Appellants filed a general demurrer and the following special exceptions:

"For special exception, these defendants say that said petition is insufficient for this: That it shows that plaintiff has an adequate remedy at law for any injuries that he may suffer or that are now threatening.

"For further special exception these defendant say that said petition is insufficient to entitle plaintiff to prosecute his suit thereunder because it shows that the plaintiff has no right or property interest in the matter in controversy; that he is now illegally holding office and is attempting to illegally continue therein.

"For further special exception these defendants say that said petition is insufficient in this: If it be true as alleged that these defendants are without legal right to disturb the plaintiff in the possession of the office in controversy, then their attempted exercise of power will cause the plaintiff no loss and he will sustain no injury thereby.

"For further special exception, these defendants say that said petition is insufficient in this: Because all the matters and things set up and involved in this litigation are purely political and not such as are subject to the direction of a court of equity, and the matters which are sought to be restrained are the exercise of legislative and political powers over which a court of equity is without jurisdiction."

The answer consisted of a general denial and admitted the incorporation of the city of San Antonio and the passage of the amendment to the charter, by the Legislature, on March 31, 1903, and that appellee was appointed chief of the fire department by the mayor of San Antonio on March 11, 1903, and was confirmed by the council and has continued to act in said office under said appointment and was then holding the office by virtue thereof. That the said appointment was not effective for more than two years from March 1, 1903, and that the Legislature had no power to extend the holding of the office for a longer period. That the police and fire department had not, by any competent authority of law, been placed under the control and regulation of commissioners, and that said commissioners had not been duly and legally commissioned and had no authority to take charge of the police and fire department. It was admitted that appellants had been elected to the offices, as stated in the petition and that they intended to qualify and enter upon the discharge of their duties, that appellants did claim that section 34a aforesaid, of the charter, was nugatory and void and that Bryan Callaghan did intend to qualify after midnight on June 1, 1903, as mayor, with the purpose of preventing and hindering the alleged police and fire commission, or anybody else, from procuring illegal acts to be done on June 1, 1905, or at any time there-

after. It was denied that a meeting of the city council at "midnight or at any other unusual or improper time, or at any period or at any time for the doing any illegal or improper thing" was ever contemplated. It was denied that appellants intended at any time to disturb or interfere with the efficiency of the police and fire department, but proposed "to perform their legal duty in a lawful and proper way, as directed by the charter and law of this city, and that they do not propose to determine or to bind themselves by a determination or declaration to this court or elsewhere for the political obligations due by them to the people of this city." A supplemental petition was filed by appellee which was excepted to and answered by appellants. On a final hearing of the cause on June 9, 1905, the exceptions were overruled and the injunction was made perpetual.

Through the medium of the first assignment of error, the appellants submit that the court erred in overruling their general demurrer to appellee's original petition, the first proposition of law thereunder being that "where a claim of office is asserted, injunction is not the proper remedy to secure or retain possession of the office and the custody and control of the property incident thereto." The same contention is made in the second and fifth assignments of error and the three will be considered together.

In this suit the petition alleges the case of an officer duly appointed, and in lawful possession of the office and property appertaining thereto to which he was appointed by lawful authority and the threatened interference with him in such possession and his removal therefrom by persons alleged to have no legal authority therefor and having no title to the office. The suit does not purport to be one between claimants for the office, each claiming to have the legal title thereto, but is a proceeding to enjoin persons making no claim to the office but who are contemplating and intending to dispossess the party seeking the injunction. This distinction must be kept in view in the consideration of the questions submitted.

The title to an office can not be tried through the medium of an injunction but the remedy by an injunction can be invoked to protect the possession even of officers *de facto* against the acts of intruders on such possession. (Beach on Inj., sec. 1380; 2 High on Inj., sec. 1315.) The foregoing principle is laid down not only in text books but is clearly set forth in numerous decisions of courts of last resort.

In the case of Guillotte v. Poincy (La.), 6 So. Rep., 507, the plaintiff was a member of the board of flour inspectors of the city of New Orleans, and alleged that he was entitled to hold the office until his successor was duly appointed and qualified, that the board was about to admit the defendant, who was claiming the office under the pretended authority of an invalid appointment made by the Governor of the State, as a member, and that the board was about to grant him a place on the board, and plaintiff prayed that he be protected in his possession of the office. The objection was made by the defendant that the petition disclosed no cause of action, in this: that the title to public office can not be tested by injunction. It was held that the proceeding was not one to try title to an office. The Supreme Court said: "But from the statement given above, it is quite apparent that

this action does not involve any decision upon the question of the disputed title to the office. Plaintiff says simply: 'I am the actual incumbent in possession of the office to which I claim to be legally entitled. Defendant claiming under a title, the validity of which I dispute, is seeking to oust me extrajudicially, in which effort he will have the aid of my fellow members on the board; and I ask judicial aid to protect my incumbency and possession, until defendant shall in due course of judicial proceeding establish his right and title.' Such an action falls within a well recognized branch of relief by injunction. . . . This doctrine is in the interest of social peace and order, and conforms to the object and policy of the law in all remedial provisions for the settlement of disputed rights, which always respect the status quo until the controversy shall be settled in orderly course of judicial procedure."

In the case of Wheeler v. Board of Fire Commissioners, 15 So. Rep., 179, the Supreme Court of Louisiana reaffirms the doctrine of the case hereinbefore cited. In that case the plaintiff sought and obtained an injunction restraining a body, that had no authority to do so, from removing him from office and putting some one else in his stead. After stating the facts the court said: "We are of the opinion that the plaintiff was justified in asking, and the court warranted in granting, the injunction which issued in this case." See also Poyntz v. Shackleford, 54 S. W. Rep., 855.

In the case of Caruthers v. Harnett, 67 Texas, 127, the same position was taken by the Supreme Court of Texas, and in the case of Ehlinger v. Rankin, 29 S. W. Rep., 240, it was held by the Court of Civil Appeals of the Third District, that injunction will lie at the suit of a county clerk to restrain a person from usurping his office.

A review of a number of authorities supports the conclusion that a court of equity will interpose by injunction to restrain interference with the possession of an office, by any man or set of men acting, or proposing to act without lawful authority. Courts of equity will not interfere to protect a person from removal from office by a man or body of men to whom the power to remove is given by law, but if no such power is given by law a court of equity will interfere to protect the incumbent in the possession of office held by him. In the case of Riggins v. Thompson, 70 S. W. Rep., 578, relied on by appellants, Riggins, the mayor of Waco, sought to restrain the city council from proceeding with an impeachment trial, and it was held that he had an adequate remedy at law and injunction would not lie. The council had legal authority to impeach the mayor and were not intruders or usurpers in any sense of the word. (Riggins v. Richards, 97 Texas, 229.) The allegations in the petition now before this court represent that the power of appointment and removal of the chief of the fire department was conferred by the charter upon the commissioners and not upon the mayor and aldermen.

If upon no other ground, appellee was in position to ask for an injunction to protect the property entrusted to his possession by the city of San Antonio as clearly appeared from the case of Caruthers v. Harnett hereinbefore cited where it was said: "There can be no doubt that a District Court has power to issue an injunction to restrain the

illegal seizure or use of the books and papers pertaining to any public office; and it would seem not only the right but also the duty of any public officer entrusted with the records, books and papers of his office, affecting his own rights as well as the public welfare, to protect them from an illegal seizure or use and to do this if necessary he may ask the interposition of a court of equity." Appellee alleged that he was in possession of the records, books, papers and property of the fire department and that they were about to be illegally seized and used by appellants. There was no adequate remedy at law by which such illegal seizure of the property of the city could be prevented and appellee was entitled to the interposition of a court of equity.

The second proposition under the first assignment is as follows: "The courts will not read the Constitution into the statute and change its terms and give it a constitutional scope where no apparent necessity exists for such course. When conforming such statute to constitutional limits, would be a distortion of the legislative intent and would also produce hopeless conflict and confusion in the statute, it will be allowed to fall by its own vice. Article 34a is therefore void and the management and control of the police and fire departments vested in the mayor and city council of San Antonio."

The third proposition is as follows: "Where several sections and paragraphs of a city charter are found in direct conflict with one another, favor in construction will be given to those sections which are constitutional and legal and valid as against another section which will require judicial aid, construction and modification before it can be put into effect. Where one section attempts to confer a life term of office on the policemen and firemen appointed under a commission, and other paragraphs confer on the city council and mayor the power to appoint for a legal term, the former must yield."

Article 34a of the charter of the city of San Antonio provides: "The police and fire departments of the city shall be placed under civil service regulation and be controlled by a board of three civil service commissioners, to be known as the police and fire commission, and such board shall have the charge, management and control of the police and fire departments of said city, and the selection, management and control and discharge of all persons serving in the police and fire departments of said city. Said board shall have the right to make rules and regulations for its management, and for the selection and discharge of all persons serving in the police and fire departments of said city, and all persons selected by said board to serve as policemen or firemen shall hold their positions during good behavior, and shall not be discharged for political reasons and in no event except for good cause and after charges have been filed and due hearing had thereon. The power of appointment given to the mayor elsewhere in this charter and the power given to the city council shall not apply to persons serving in the police and fire departments of the city." In the remaining portion of the section the qualifications of the commissioners are set out, the term of office fixed at two years with no compensation and provision made for the first members of the board in January, 1905, their qualification on June 1, 1905, and an election for members on second Tuesday in November, 1905."

It is contended that the section quoted is invalid because it provides for life- tenure of office of the appointees in the two departments and because it is in conflict with other sections of the charter. We do not think that it was the intention of the Legislature to give a life tenure to the appointees in the police and fire departments. It may be safely assumed that the purpose of section 34a was to give the management and control of the fire and police departments to a board that would not be affected by the political complexion of the executive and legislative departments of the city. This is indicated by the fact that it is provided that the election of the commissioners shall take place at a different time from that prescribed for the election of the other officers of the city and that no appointee in the two departments shall be removed for political reasons. The purpose was to put the two departments outside of the domain of partisan politics and place their tenure of office upon the high basis of efficiency and good service, and not subject them to the political exigencies and demands of each new administration. To accomplish this end a provision was necessary to prevent the removal of men from either department on political grounds. "Good behavior," good service to the public and not fealty to a political party or loyalty to the political interests of any man, were to be made the basis for service in such offices. It will not be supposed that the Legislature intended to violate the provisions of the Constitution, but rather that they were kept in view, and that by "during good behavior" the Legislature did not mean good behavior during life, but good behavior during the term of two years. The legislature did not see proper to give the office to the appointees in the police and fire departments for life or good behavior, but for the time they gave service, for a term not greater than the constitutional time. That this construction is the true one is not an open one in Texas. (Proctor v. Blackburn (Texas Civ. App.), 67 S. W. Rep., 548; City of Houston v. Estes (Texas Civ. App.), 79 S. W. Rep., 848.) In the last case cited a writ of error was refused by the Supreme Court.

By those two cases, as well as by others, it has been settled that if the intention was to give a life tenure of office that part of the law could be discarded without in any manner affecting the other provisions of the law. Cawthon v. City of Houston (Texas Civ. App.), 71 S. W. Rep., 329; Albers v. City of Houston, 73 S. W. Rep., 1084.)

The main purpose of the section of the charter under consideration was to place the appointment, management and control of the police and fire departments in the hands of a board consisting of three men, in order that such departments would not be affected by biennial elections and the requirement that the appointees should have office during good behavior was a mere incident to the main object of the statute. No doubt the Legislature would have adopted it if the criticised feature had been omitted. (Railway v. Mahaffey (Texas Civ. App.), 84 S. W. Rep., 646; State v. Trewhite (Tenn.), 82 S. W. Rep., 480.)

In section 17 of the charter of the city of San Antonio it is provided that any appointive officer, employe, agent or servant of the city employed under the authority of the council may be discharged from service by the mavor for any reason he may deem sufficient. In other

sections the city council is given the care, management and control of the city and its property, and is given the authority to establish a police force and regulate the same and to establish, regulate and maintain a fire department. It is contended that section 34a is in conflict with the foregoing grants of power to the mayor and city council in that it gives the charge, management and control of the police and fire departments and the selection, management, control and discharge of the appointees therein to the board of civil service commissioners. We do not think the contention well founded. The mayor is given the power to discharge any appointed officer, employe, agent or servant *employed under authority of the council,* which indicates that the Legislature did not desire to clothe the mayor with the authority to discharge firemen or police officers. There is no conflict between that grant of power and that given the board of civil service commissioners. The mayor is denied the authority to appoint persons in the police and fire departments and he is *denied* the authority to remove them.

We do not think there is any conflict between the powers given the city council and those granted the board of civil service commissioners. The power to establish, regulate and maintain police and fire departments is not destroyed by the power given to a board to appoint and discharge the employes in the departments or to manage and control such departments. However, if there should be a conflict it shall be resolved in favor of the section granting special powers to the board, for it is a familiar rule of construction that where there is an act or provision which is general, and applicable to many subjects as is article 2 of the charter which defines the powers of the city council, and there is also another act or provision which is particular and applicable to one of the subjects, as is section 34a, if it be inconsistent with the general act they will not be held invalid, but the general act would operate according to its terms on all the subjects embraced, except the particular one which is the subject of the special act. Thus in this case, if the right to establish, regulate and maintain the fire department given to the city council is invaded by the actual management and control of the fire department being granted specially to the board of civil service commissioners, such management and control of the fire department would be deemed an exception, even if the provisions were in separate acts, and the presumption is much stronger when the conflicting provisions are in the same act. (Suth. Stat. Con., 217; Garner v. Stubblefield, 5 Texas, 552; Erwin v. Blanks, 60 Texas, 583; Gulf, C. & S. F. Ry. v. Rambolt, 67 Texas, 654.)

As authority for their position in connection with the subject of the conflict, hereinbefore stated, appellants cite the cases of Ex parte Levine, 81 S. W. Rep., 1206; Rowan v. King, 56 S. W. Rep., 103, and Kimbrough v. Barnett, 93 Texas, 301. A review of these authorities, we think will show that they do not sustain the contentions of appellants.

The first case is one decided by the Court of Criminal Appeals and clearly does not touch anything connected with this case. In that case it was held, first, that a provision in the charter of a city providing for its government by a commission to be appointed by the

Governor was unconstitutional although the Supreme Court had decided otherwise; second, that the invalidity of that portion of the charter did not destroy the vitality of the rest of it; third, that a court established by a city charter is a city court and not a State court; and fourth, that when the sale of liquor has not been prohibited by an election of the inhabitants of a city, a provision in its charter prescribing a saloon limit is not in conflict with the local option provision of the Constitution.

The case of Rowan v. King, decided by the Court of Civil Appeals of the Third District, follows the case of Kimbrough v. Barnett, which holds that the provisions of an Act of 1899 giving four years terms to the trustees of independent school districts rendered the whole Act void because all the other parts of the Act were dependent on that part of it. We hold in this case that section 34a is not dependent on the part referring to continuance in office during good behavior and that position is sustained by the case of City of Houston v. Estes, in which a writ of error was refused by the Supreme Court long after the decision in the Kimbrough case. The question in that case was the identical one presented in this.

The Supreme Court, in the case of Brown v. City of Galveston, 97 Texas, 1, has definitely settled that the powers and prerogatives usually granted to mayors and city councils can be taken wholly from them and confined to a commission appointed by the Governor, and there can be no valid reason advanced against the placing of the management and control of the police and fire departments of a city in the hands of a commission to be chosen by the people themselves.

The title to the office of chief of fire department can not be adjudicated in this case, and it follows that the third assignment of error, which complains of the overruling of the second special exception to the petition, can not be sustained. The proposition under that assignment is that the constitutional term of office is two years and that a party holding an office beyond that term can not maintain suit by injunction to perpetuate himself in said office or restrain the proper authorities from appointing his successor. That proposition may be an absolutely correct one, but the original petition does not disclose any such state of case. On the other hand it appears from the allegation that an officer who had been duly and legally appointed and had been serving in the office for over two years and whose successor had not been appointed was about to be ousted from the office and the property of the city taken possession of by a body of men who, under the provisions of the charter, had no authority to appoint his successor or to take possession of the property and papers appertaining to the office. Appellee showed by his pleading that he was a *de jure* officer and "while courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers *de facto* by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants." (2 High Inj., sec. 1315.)

Under the State Constitution of 1876 District Courts and the

judges thereof were given "power to issue writs of habeas corpus in felony cases, mandamus, injunction, certiorari, and all writs necessary to enforce their jurisdiction," and the Appellate Courts uniformly held while that provision was in effect that District Courts had the authority conferred by it to issue writs of injunction irrespective of the subject and amount involved. (County of Anderson v. Kennedy, 58 Texas, 616; Alexander v. Holt, 59 Texas, 205; Stein v. Frieberg, 64 Texas, 271.)

In the first named case the Supreme Court said of section 8, article 5, of the Constitution of 1876, which defined the jurisdiction of District Courts: "This could not have been deemed necessary to enable these courts to enforce the jurisdiction given, and limited and determined by subjects and amounts; for full power, as before said, was expressly given to issue such writs as were necessary for that purpose. It seems to us, that, by giving the express power to issue certain designated writs, after having given a broad and general power to issue all writs necessary to enforce the jurisdiction of these courts, it was intended to confer upon such courts a jurisdiction to act *upon persons* under the well settled rules of common law and equity procedure, which jurisdiction it was very difficult to define with entire accuracy in the narrow limits of a Constitution. . . . In declaring that the District Courts shall have power to issue writs of injunction, there is no limitation as to the subject matter or amount necessary to clothe the court with power to hear and determine, as there is in reference to such jurisdiction as is determined by subject matter or amount in controversy. It would be hard to believe that it was the intention of the Constitution to give to no court the power to hear and determine a multitude of questions which affect the welfare of the people most vitally, which power can not be measured by dollars and cents or defined by subject matter."

In the case of Stein v. Frieberg, hereinbefore cited, the District Court had dismissed the suit and it was said: "If the court in so holding meant to decide that it could not take jurisdiction of the suit because the amount in contorversy was too small to give jurisdiction to the District Court, then its decision is directly contrary to the ruling of this court in the County of Anderson v. Kennedy, 58 Texas, 616, and other cases which have followed that decision. It was there held that District Courts have the power to issue writs of injunction in cases in which a court of chancery, under the settled rules of equity, would have power to issue them; and this without reference to the amount in controversy, under the express power given in the Constitution,"

In 1891 a new judiciary article 5 for the Constitution was adopted by the people of Texas, and in section 8 thereof, defining the jurisdiction of the District Courts, their powers and authority were amplified and made broader than before. Not only was the power given to grant writs as before, but the section closes with the comprehensive grant of "general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law." That provision is broad enough to comprehend every

subject over which jurisdiction has not been specially granted by the Constitution to some other court.    (Dean v. State, 88 Texas, 290.)

It is true that in the case of Dewitt County v. Wischkemper, 95 Texas, 435, the Supreme Court held that a County Court has, under the present Constitution, the right to issue writs of injunction where the matter in controversy exceeds $200 and does not exceed $1,000, but there is no intimation that District Courts could not issue writs of injunction in such cases also.  In that case the value of the matter in controversy was not alleged, and the court held that the County Court had no jurisdiction to issue the writ of injunction.  That the court in that case did not intend to hold that in cases where the amount in controversy is not less than $200 nor more than $1,000, the District Court had no jurisdiction. is apparent from the fact that the case of Johnson v. Hanscom, 90 Texas, 321, is cited with approval, and in that case it was in effect held that District Courts had jurisdiction of such causes.  There is no expression in any opinion of the Supreme Court that questions the principles laid down in Anderson v. Kennedy, hereinbefore cited.

In the fourth assignment it is stated that the petition showed that the office was of no value and if that be true no other court had jurisdiction of the cause (Dewitt v. Wischkemper) and there is therefore no provision made for jurisdiction of such causes in any court and under the Constitution the District Court had jurisdiction of it. We do not intend, however, to hold that if the value stated had been one within the jurisdiction of the County Court the District Court would not have had jurisdiction, for we hold that, under the Constitution of Texas, District Courts have the power and authority to issue writs of injunction in all cases, irrespective of the amount in controversy, in which courts of chancery could have issued them under the rules of equity jurisprudence.  So it was held under a Constitution in which the power granted to the District Courts was not near so broad and comprehensive as under the present Constitution.  Gulf, C. & S. F. Ry. v. Henderson, 83 Texas, 70.)

The Constitution of Texas fixes the duration of all offices not otherwise fixed by it, at two years, but it further provides that "all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified."  Appellee seems to have been performing his constitutional duty in continuing to act as chief of the fire department as his successor had not been appointed, and consequently had not qualified.  He was not only a *de facto* but a *de jure* officer and consequently empowered to protect the property appertaining to the office from seizure by unauthorized persons.  The decision in the case of State v. Catlin, 84 Texas, 48, contains nothing that tends to support the contention of appellants.

There is no merit in the eighth assignment.  It was admitted that a fire department had been regularly established in the city of San Antonio and it was proved that appellee had been regularly appointed chief of that department and the uncontradicted proof showed that he was in lawful possession of the property belonging to the fire department and had been ever since he was first appointed.

We find that the material facts alleged in the petition, as herein

set forth, were either admitted by appellants or proved by appellee, and those facts were sufficient to uphold the decree of the court. The judgment is affirmed.

*Affirmed.*

Writ of error refused.