## CITY OF ELECTRA et al. v. TAYLOR.
### (No. 11889.)

Court of Civil Appeals of Texas. Fort Worth.
July 9, 1927.

Rehearing Denied July 16, 1927.

**1. Injunction ⚫81—Injunction is proper remedy to prevent threatened ousting of chief of police and fire marshal from office.**

Where it was alleged that commissioners of a city were threatening to relieve the chief of police and fire marshal of his official positions, injunction rather than mandamus was proper remedy to prevent such action.

**2. Evidence ⚫31—Court of Civil Appeals must take judicial notice of charter of city.**

The Court of Civil Appeals must take judicial notice of the charter of the city of Electra.

**3. Municipal corporations ⚫182—City commissioners held empowered to remove chief of police and fire marshal without giving reason therefor (Electra City Charter, art. 4, § 3).**

Under Electra City Charter, art. 4, § 3, commissioners of the city by majority vote *held* empowered to remove chief of police and fire marshal appointed by them without giving reason for their action.

**4. Municipal corporations ⚫124(5)—City charter should be so construed that provisions for dismissal of officers may stand without conflict.**

Provisions of charter of city of Electra empowering city commissioners to remove officers for cause and by unanimous vote and for removal of appointed officers by a majority vote must be reconciled, if possible, so that both may stand without conflict.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Action by James T. Taylor against the City of Electra and others. From a judgment for plaintiff, defendants appeal. Judgment reversed, temporary injunction vacated, and cause remanded for further proceedings.

Allred & Allred, of Wichita Falls, for appellants.

Kilgore, Rogers & Montgomery, of Wichita Falls, for appellee.

BUCK, J. This is an appeal from an order entered by the judge of the Seventy-Eighth district court of Wichita county, Tex., on the 28th day of May, 1927, granting an injunction to the plaintiff, James T. Taylor, against the defendants George E. Ragland, mayor of the city of Electra, and George F. Lebus, C. R. Miller, A. C. Rippy, and M. D. Goldsmith, commissioners. The petitioner alleged that on April 4, 1926, he was by appropriate action upon the part of the mayor and commissioners of the city of Electra duly ap-

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pointed to the office of chief of police and fire marshal, and on said day qualified as such chief of police and fire marshal by complying with the provisions of the city charter of Electra, Tex., since which time he has at all times been duly appointed, qualified, and acting city fire marshal and chief of police of the city of Electra, and has performed the respective duties thereof in a diligent and efficient manner. On the 27th day of April, 1927, at a meeting of the city commission of the city of Electra, by a resolution offered by one of the commissioners, said city council by a majority, but not by a unanimous vote, passed a resolution in words and figures as follows:

"We recommend that James T. Taylor be relieved from all duties as chief of police at a salary of $200 per month, and also that he be relieved from all duties as city fire marshal at a salary of $25 per month, and that both of his salaries be stopped."

This resolution was adopted with commissioners and defendants Goldsmith, Miller, and Lebus voting in favor thereof, and the defendants Ragland and Rippy voting against said resolution, whereupon the same was declared carried and entered among the minutes of the meeting. Thereafter, by a majority but not by a unanimous vote, said commission adopted a resolution whereby this plaintiff was to be relieved of his duties as chief of police and fire marshal on June 1, 1927, whereas the term for which this plaintiff was appointed was for a period of two years from and after the 14th day of April, 1926.

At the time he was appointed and qualified, the salary of plaintiff was by defendants fixed at $200 for the office of chief of police and $25 for the office of city fire marshal; that this plaintiff has in his possession the records, books, papers, and property of said respective offices and has control of the subordinates therein; that under the terms of the charter existing at the time of plaintiff's appointment, and at the time of the suit, the incumbent of these two offices shall hold office until their successor shall be appointed and qualified. That section 6 of article 7 of the charter of the city of Electra, in effect at the time of this plaintiff's appointment and at the time the suit was filed, provides that:

"The city commission shall have power to remove any officer for gross immorality, habitual drunkenness, incompetency, corruption, misconduct, or malfeasance in office, after due notice and an opportunity to be heard in his defense, and shall have power at any time to remove any officer or employee of the city, elected or appointed by it or under its authority, by resolution declaratory of its want of confidence in such officer or employee: Provided, that such removal can only be made upon a unanimous vote in favor of such resolution."

That plaintiff has performed the duties of said offices so that none of the grounds for removal as set out in said section 6 are applicable to him or to his conduct, and no such charge or charges have been made against him, nor has any notice of a hearing been given, nor has any hearing been had, nor has there ever been a unanimous vote in favor of a resolution calling for this plaintiff being relieved of his duties as chief of police and city fire marshal. That notwithstanding the above facts, the defendants are threatening to and, unless restrained by this honorable' court, will immediately after midnight of June 1, 1927, appoint and confirm the defendant Tom Shook, or some other person, as chief of police and city fire marshal, and will seize and take from this plaintiff the property belonging to said departments, and will oust this plaintiff from said offices and deprive him of the control and management of the persons serving in said departments and repeal the ordinance establishing said departments, and will alter, reduce, or wholly destroy all provisions for salary for said offices, and will pass such resolutions as will impede, interfere with, and hinder this plaintiff in the performance of his respective duties. That plaintiff has in said respective offices a vested interest which is of value to him and for his security in which he is entitled to the protection of this court against the wrongful acts and conduct of the defendants herein; that he has no adequate remedy at law, and unless the district court should issue its most gracious writ of injunction, the defendants and each of them will oust him from office and place Tom Shook or some other person therein, and will do such other things as above stated, to this plaintiff's irreparable injury.

The plea to the petition was as follows:

"Wherefore, premises considered, this plaintiff prays the court to issue at this time its most gracious writ of injunction restraining the defendants and each of them from putting into effect the resolution passed by the city council from ousting this plaintiff from said respective offices, from depriving this plaintiff of the use and possession of the books, documents, and properties belonging to said offices, from hindering, delaying, impeding, or in any way interfering with this plaintiff in the lawful discharge of his duties as city fire marshal and chief of police, from passing any resolution affecting the respective salaries of this plaintiff or affecting this plaintiff's vested right in and to said offices, from placing Tom Shook or any other person in a position whereby he would assume to act as chief of police and city fire marshal, and from withholding payment of the stipulated salaries of this plaintiff accruing to him by reason of his official position and work thereunder; that said injunction issue against the defendants in both their individual and official capacities; that upon a hearing hereof, said injunction be made perpetual and for such other and further relief, general and special in law and in equity, to which plaintiff may show himself justly entitled to receive."

The petition was filed May 27, 1927, and on May 28th, in chambers, Judge W. W. Cook, of the Seventy-Eighth judicial district at Wichita Falls, granted the writ in the following words:

"The above and foregoing application for injunction being to the court presented and by the court considered, it is the opinion of the court that the same should be and it is hereby granted, and the clerk of this court is directed forthwith to issue the writ in all things as prayed for by plaintiff upon plaintiff's executing and filing among the papers of this case, a good and sufficient bond in the sum of $1,000 conditioned as the law requires."

A bond in the sum of $1,000 was filed payable to the defendants. A writ of injunction was issued in which the defendants and each of them were restrained from putting into effect the resolution passed by the city council, from ousting this plaintiff from said respective offices, from depriving the plaintiff from the use and possession of the books, documents, and properties belonging to said offices, from hindering, delaying, impeding, or in any way interfering with this plaintiff in the lawful discharge of his duties as city fire marshal and chief of police, from passing any resolution affecting the respective salaries of this plaintiff or affecting this plaintiff's vested right in and to said offices, from placing Tom Shook or any other person in a position whereby he would assume to act as chief of police and city fire marshal, and from withholding payment of the said salaries of this plaintiff accruing to him by reason of his official position and work thereunder; that said injunction issue against the defendants in both their individual and official capacities.

## Opinion.

Appellant urges two main propositions, to wit: (1) That the petition for injunction is bad, because it does not aver all the material and essential elements constituting the right to the injunction, and does not negative every inference of the existence of facts under which the petitioner would not be entitled to relief. (2) Plaintiff below has mistaken his remedy, if any he has, and that he should have resorted to the remedy of mandamus rather than the remedy of injunction.

[1] Discussing the two questions suggested, in reverse order, we think that a mandamus would not have been the proper remedy. In Callaghan v. McGown, 90 S. W. 319, writ of error denied, it was held by the San Antonio Court of Civil Appeals, that a municipal officer de jure or de facto is entitled to an injunction to restrain the city authorities from unlawfully appointing a successor and dispossessing him of his office and the property thereof. To the same effect is Callaghan v. Tobin, 40 Tex. Civ. App. 441, 90 S. W. 328, writ of error denied.

In Callaghan v. McGown, on motion for rehearing, the court discusses the question as to whether a mandamus or an injunction is the proper remedy, in the following language:

"The proposition that 'injunction is not the proper remedy to secure and retain possession of an office, the custody and control of property incident thereto, and try title to office, and that therefore this court erred in sustaining the action of the trial court in overruling appellants' general demurrer to appellees' original petition,' assumed as its premise the very question in controversy; i. e., the purpose of this suit was to secure appellees in possession of their office, and try title thereto. Upon reading and considering appellees' original petition we conclude that its allegations did not warrant such an assumption; but, on the contrary, its purpose was to restrain appellants, who simply disputed appellees' right to their office, from interfering with them in the discharge of their official duties, and contented ourselves with citing authorities to show that injunction was the proper remedy. Before stating the substance of the petition, in order to show our interpretation of it was correct, we will, as it is insisted in this motion that mandamus and not injunction was the remedy, show the distinction, as pointed out by elementary authorities, between the two writs. It is said by High on Extraordinary Legal Remedies (3d Ed.) § 6: 'It is only when we come to consider the object and purpose of the two writs that the most striking points of divergence are presented. An injunction is essentially a preventive remedy; mandamus a remedial one. The former is usually employed to prevent future injury; the latter to redress past grievances. The functions of an injunction are to restrain motion and to enforce inaction; those of a mandamus to set in motion and to compel action. In this sense an injunction may be regarded as a conservative remedy; mandamus as an active one. The former preserves matters in statu quo, while the very object of the latter is to change the status of affairs and to substitute action for inactivity. The one is, therefore, a positive or remedial process; the other a negative or preventive one. And since mandamus is in no sense a preventive remedy, it cannot take the place of an injunction, and will not be employed to restrain or prevent an improper interference with the rights of relators.' 'Mandamus and injunction should not be confounded. The latter is used to prevent action, to maintain affairs in statu quo. The former is compulsory, commanding something to be done. An injunction is preventative and protective merely, and not restorative. It interposes between the complainant and the injury he fears or seeks to avoid. If the injury be already done, the writ can have no operation, for it cannot be corrective so as to remove it. It is not used for the purpose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong. * * * Mandamus, however, is compulsory, and requires doing an act. It lies to command the doing of what ought to be done, and not to undo what has been done. It does not revise or correct action. It cannot command to abstain from a tort or abuse of office. It never had the effect of the old writ of de molestando. It will be refused to prevent one claiming to be elected from exercising his

office or to enjoin him from qualifying. When officers request mandamus to prevent others from molesting them in the exercise of the functions and powers of their offices, the court refuses the writ, stating that, if the writ were issued in the case, it would become merely a substitute for an injunction. Such substitution will not be allowed.' Merrill on Mandamus, § 43. 'The writ (mandamus) will not lie unless the act desired is of absolute obligation on the part of the person sought to. be coerced. The relator must show, not only a clear legal right to have the thing done, but also by the person sought to be coerced, in the manner sought, and that he still has it in his power to perform the duty required. The action sought must not only be in the respondent's power to do, but it must be his duty to do it. The act must be clearly prescribed and enjoined by law. The duty must be plain and positive. * * * A duty which involved a decision that a law was unconstitutional was not considered plain.' Merrill on Mandamus, § 57."

Inasmuch as plaintiff alleged merely that the defendants were threatening to relieve him of his official positions, and inasmuch as plaintiff was still occupying said positions at the time of the filing of the suit, we hold that injunction rather than mandamus was the proper remedy.

[2, 3] As to the second ground for attack on the judgment, we will now turn. The charter of the city of Electra, of which this court must take judicial knowledge, has two sections involving the right of removal by the city commission of any officer or employee of the city. Article 7, § 6, is as follows:

"The city commission shall have power to remove any officer for gross immorality, habitual drunkenness, incompetency, corruption, misconduct, or malfeasance in office, after due notice and an opportunity to be heard in his defense, and shall have power at any time to remove any officer or employee of the city, elected or appointed by it or under its authority, by resolution declaratory of its want of confidence in such officer or employé: Provided, that such removal can only be made upon a unanimous vote in favor of such resolution."

Article 4, § 3, reads:

"*Appointive Officers.* There shall be appointed, by a majority of the members of the city commission, on the nomination of the mayor or any member of the city commission, a city secretary and treasurer, a city recorder, a city auditor (when in the discretion of the city commission, a city auditor is necessary), members of the board of equalization, and assessor and collector of taxes, chief of police, and city attorney, and such other officers as the commission may from time to time direct, any of whom, except the board of equalization, may be removed by a like majority vote of the said city commission at the pleasure of said board of city commissioners: Provided, that one person may hold the offices of city secretary and treasurer."

It will be noted that, under the first quoted article, the city commission has power to remove any "officer for gross immorality, habitual drunkenness, incompetency, corruption, misconduct, or malfeasance in office, after due notice and an opportunity to be heard in his defense, and shall have power at any time to remove an officer or employee of the city, elected or appointed by it or under its authority, by resolution declaratory of its want of confidence in such officer or employee, provided, that such removal can only be made upon a unanimous vote in favor of such resolution." Under section 3, art. 4, it is provided that the officers of the city, except the board of equalization, "may be removed by a like majority vote of said city commission at the pleasure of said board of city commissioners."

[4] It is the duty of this court to reconcile, if it may, the provisions of the two sections, so that both may stand, without conflict. Reasonable construction of the section 6 is that for certain designated acts of immorality, incompetency, etc., an officer may be removed, but he is entitled to notice and a trial on the charges. One who has been discharged for gross immorality, incompetency, corruption, etc., is entitled to face his accusers, and to process, for witnesses to testify in his behalf, to disprove, if possible, such charges. It is further provided in said section that any officer or employee of the city, elected or appointed, may be removed by a resolution declaratory of its want of confidence in such officer or employee, but it is further provided that such removal can only be made upon the unanimous vote in favor of such resolution. The "want of confidence" is not so definite a charge, nor does it carry with it the disgraceful imputations as to the charges of corruption, gross immorality, etc. Therefore it reasonably appears that the commission may by a resolution declaratory of its want of confidence in an officer or employee remove him, without charges filed and a trial thereon, but such resolution must be concurred in by the entire commission present. As to other reasons and occasion for the removal of an officer or the discharge of an employee, the city commission is authorized, as shown in section 3, art. 4, to remove or discharge him by a majority vote.

It will be noted that the resolution passed by a majority of the commission did not charge plaintiff below with incompetency, gross immorality, corruption, malfeasance in office, etc., nor did it express a lack of confidence by the city commission in said plaintiff. Apparently, the resolution was the means of discontinuing the service and employment of said plaintiff, without giving any reason for such action. We believe that under section 3 of article 4 said commission had the authority so to do. If so, there was no ground upon which the prayer for the writ of injunction could rest. In Callaghan v. McGown, and Callaghan v. Tobin, supra, the

city charter placed the police and fire departments under civil service rules and regulations. The employees of these two departments could not be discharged without cause, and were entitled to hold their position during good behavior. Therefore neither the mayor nor the mayor and the city commission were entitled to discharge them, without charges filed against them, a hearing had, and a showing made that they had been guilty of conduct justifying their removal. But such conditions do not exist in the city of Electra. There is no charter provision requiring that any officer or employee shall be entitled to protection from discharge or removal because of any civil service regulations and rules. Section 3, art. 8, under the head of "Duties and Powers of Officers," defines the duties of a chief of police, but does not contain any term for which he may be entitled to serve during good behavior. Section 4 of said article provides:

"Policemen and other police officials may be appointed by the city commission, and such officials shall hold their offices at the pleasure of the city commission, not to exceed a period of two years under any one appointment, and said officials shall perform such duties and receive such compensation as the city commission may direct."

We find no other provision of the city charter guaranteeing to the chief of police or to the fire marshal any definite tenure of office during good behavior, and we conclude there is none. Therefore it seems to us a majority of the commission had the authority to discharge the petitioner below, and the judgment of the trial court is reversed, the temporary writ of injunction is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.

### On Appellee's Motion for Rehearing.

In appellee's motion for rehearing, he cites certain portions of the court's statement of appellee's pleadings as findings of fact by this court. For instance, the court, in its statement of the pleadings and contentions of plaintiff below, said:

"Said commission adopted a resolution whereby this plaintiff was to be relieved of his duties as chief of police and fire marshal on June 1, 1927, whereas the term for which this plaintiff was appointed was for a period of two years from and after the 14th day of April, 1926."

The court further stated:

"That plaintiff has performed the duties of said offices so that none of the grounds for removal as set out in said section 6 are applicable to him or to his conduct, and no such charge or charges have been made against him, nor has any notice of a hearing been given, nor has any hearing been had, nor has there ever been a unanimous vote in favor of a resolution calling for this plaintiff being relieved of his duties as chief of police and city fire marshal."

As before stated, they were but statements of pleadings of the plaintiff below, and not statements of findings of fact by this court. Appellee's counsel admits this to be true in his oral argument, but insists that the court must have found such to be the facts upon the record and the pleading of plaintiff in his sworn petition.

In the oral argument, the counsel states that the opinion of this court is correct, unless it must be admitted and assumed, from the sworn petition and provisions of the charter, that the appellee was elected or appointed by the commissioners of the city of Electra for a period of two years, subject to removal only upon charges filed and the finding that appellee was guilty of such charges, so as to render him subject to removal. He urges that the cases of City of Paris v. Cabiness, 44 Tex. Civ. App. 587, 98 S. W. 925, and Ridgway v. City of Fort Worth (Tex. Civ. App.) 243 S. W. 740, are in conflict with our holding that appellee was subject to removal by a majority vote of the commissioners, without any charges being filed, and that he be proved guilty of such charges.

In the Ridgway Case, by this court, opinion by Chief Justice Conner, it was shown that, under the charter of the city of Fort Worth, the board of commissioners had the power to remove any elective officer for incompetency, corruption, malconduct, malfeasance, or nonfeasance in office, or such other causes as may be prescribed by ordinance, after notice in writing and opportunity to be heard in his defense, under the rules and regulations therein. It was provided by ordinance that, with the exception of the corporation counsel, all officers and employees of the city of Fort Worth, whose position comes by appointment from the board of commissioners, may at any time be removed from office by a vote of the majority of said board, and in making said removal, it was not necessary nor required to assign any reason therefor. It was further provided in the charter of the city of Fort Worth that the corporation counsel could be removed only "for such causes as would occasion removal of a member of the board of commissioners," the manner, method, or procedure to be adopted by the commissioners in the ascertainment of the specified cause of removal not being provided for. This court held that inasmuch as the city of Fort Worth had not provided by charter or ordinance the procedure governing the removal of the corporation counsel, and he being elected or appointed for a fixed term, subject to removal for cause, he was entitled to notice and a hearing in order that he might have an opportunity to defend himself. But in the instant case there is no such provision in the charter, but the charter does provide that city officers, including chief of police, "may be removed by a like majority vote of said city commission at the pleasure of said board of

city commission." We think that the charter provision in article 4, § 3, does provide a method of removal of appellee here, and that it is specially provided that a majority vote of the commissioners may remove him and at the pleasure of the commissioners. That those provisions include the idea that, except as to the grounds and causes in article 7, § 6, of the charter, quoted in original opinion, appellee was subject to removal at the pleasure of the commissioners, without their giving any cause or reason for such removal.

Appellee urges that in the absence of any fixed term for the tenure of position of chief of police, under a sworn allegation in his petition that he was appointed for a period of two years, he would be entitled to hold said position for the two years' term, in spite of the provisions of article 4, § 3, of the charter, unless he should be removed for good cause, after charges filed and a hearing had. He cites the case of City of Paris v. Cabiness, 44 Tex. Civ. App. 587, 98 S. W. 925. Cabiness sued the city of Paris to recover the balance of salary alleged to be due him for two years subsequent to his appointment. His petition alleged that on a certain day, plaintiff was appointed policeman; that he entered on his duties the following day; that he performed his duties until a certain day, when without any fault on his part, and without charges, notice, or trial, the city marshal, without authority, dismissed him; that under the Constitution and laws, the tenure of his office was for two years; that he had continuously held himself ready to perform the duties of his office, but that his name had been stricken from the roll, and his salary not paid; that no authority was vested in the city marshal to discharge him, but such authority was in the city council alone. The court said:

"Besides, it does not appear that his discharge was based upon any such ground. He qualified and entered upon the discharge of his duties. He was recognized under the appointment made, and his salary paid by appellant for three months without objection, and without any question being raised concerning the legality of his appointment so far as disclosed by the record. Under these facts it seems clear that he became an officer de jure, and entitled to hold the office to which he had been appointed for two years, unless lawfully ousted," citing cases.

The opinion further states:

"Clearly the policy of this state is that all appointments to a public office shall be based alone upon the qualification and fitness of the appointee, and that the terms of all officers, except, perhaps, some special appointment to meet an emergency, shall be fixed by law, and are not the subject of contract. Where not otherwise fixed, article 16, § 30, of the Constitution, limits the term to two years, and this provision has been construed to fix the tenure of the constitutional term at two years, subject to the provision of removal for cause dur-

ing that time. * * * The term of appellee's office does not appear to have been fixed by appellant's charter, by an ordinance, or by any statute of the state. Therefore section 30 of the Constitution, above referred to, and the construction given it, are applicable. The character of service was not a mere employment, but, as a result of his appointment, appellee acquired a franchise in the office, and, upon his qualification, became entitled to the office and its emoluments for the period of two years (subject only to removal in the manner and for cause as prescribed by appellant's charter), by law, and not by force of, but in spite of, any parol agreement he may have entered into with reference thereto with appellant's city council."

It does not appear that the charter of the city of Paris provided, as in this case, that appointive officers and employees might be removed by a majority vote "at the pleasure" of the governing body. We think this difference in the facts distinguishes the City of Paris v. Cabiness Case from the instant case.

The motion for rehearing is overruled.