# JANUARY, 1904.

### J. W. RIGGINS v. BEN C. RICHARDS ET AL.

#### No. 1268. Decided January 7, 1904.

**1.—Mayor—Impeachment by City Council.**

Construing articles 4, 7, 35, 36, 37, 87, 273 and 274 of the special charter of the city of Waco, it is held, that the city council had authority thereby to try the mayor and remove him from office for corruption, misconduct or malfeasance therein; that the term "any officer," as used in article 273, embraces elective officers as well as those appointed by the council; that the power conferred need not be exercised by the whole council, composed of mayor and aldermen, but in a case where the mayor was interested and disqualified could be by the aldermen and their president pro tem; and that the power of removal "after due notice and opportunity to be heard in his defense" was effective without the adoption of rules of procedure by the council before entering on the hearing. (Pp. 232-237.)

**2.—Same—Aldermen Preferring Charges—Disqualification.**

Aldermen were not disqualified from acting as members of the city council in an impeachment trial of the mayor by the fact that they had joined in offering the resolution presenting charges against him; they were acting in the trial in an administrative and not a judicial capacity; nor did the fact that they had presented the charges give them any disqualifying personal or pecuniary interest in the result. (Pp. 237, 238.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

*Waller S. Baker, Scarborough & Kimball,* and *W. L. Radney,* for appellant.—Where offices are elective and the terms fixed by the charter, the right of removal is not lodged in the city council. Keenan v. Perry, 24 Texas, 259; Collins v. Tracy, 36 Texas, 546; Upshaw v. Booth, 37 Texas, 126; Honey v. Graham, 39 Texas, 10.

The court erred in overruling subdivision (b) of the general demurrer, as follows: "Because said article 273 is inoperative and void

for the want of a mode of procedure thereunder, either by said charter itself or authorized under said charter." The court erred in not holding that respondents' removal of relator under and by virtue of article 273 of the charter of the city of Waco was null and void because said article is not self-executing and no mode of procedure was enacted by ordinance or resolution whereby respondents were given the right to remove relator. Article 273 is not self-acting or self-executing. Legislation is necessary to give it effect. Missouri K. & T. Ry. Co. v. Railway Co., 10 Fed. Rep., 503; Bowie v. Lott, 24 La. Ann., 214; Groves v. Slaughter, 40 U. S., 15 Pet., 499; French v. Teschemaker, 24 Cal., 518.

The court erred in overruling subdivision (c) of said general demurrer as follows: "Because said finding of the city council is an attempt to perform a judicial act, and said council, nor any number of its members, are not constituted and can not be constituted into a court under the Constitution and laws of Texas, and is without jurisdiction to hear and determine any judicial question touching the question involved of removing plaintiff from office."

The court erred in not holding that the finding of the city council of the city of Waco was an attempt to perform a judicial act, and that said council, nor any of its members, constituted a court under the Constitution and laws of Texas, and in not holding that said council was without jurisdiction to hear and determine any judicial question touching the questions involved on removal of relator from office.

The court erred in overruling subdivision (d) of said general demurrer as follows: "Said article 273 attempts to confer authority on the city council composed of the mayor and ten aldermen to remove officers, and does not confer or attempt to confer any authority on any part of said council to remove any member of said council."

Where offices are elective and the terms fixed by the charter the right of removal is not lodged in the council. Keenan v. Perry, 24 Texas, 259; Collins v. Tracy, 36 Texas, 546; Upshaw v. Booth, 37 Texas, 126; Honey v. Graham, 39 Texas, 10.

The court erred in overruling the first special exception of relator to answer of respondents, which exception challenges the right of the seven members of the city council who signed the charges to sit in the capacity of a court upon the said charges filed by them. The aldermen of the city council of the city of Waco were disqualified and recused to try appellant.

The court erred in not holding that respondents' removal of relator under and by virtue of article 273 of the charter of the city of Waco was null and void because said article is not self-acting or self-executing and no mode of procedure was enacted thereunder by ordinance or resolution whereby respondents were given the right to remove relator. Missouri K. & T. Ry. Co. v. Railway Co., 10 Fed. Rep., 503; Bowie v. Lott, 24 La. Ann., 214; Groves v. Slaughter, 40 U. S., 15 Pet., 499; French v. Teschemaker, 24 Cal., 518.

The court erred in not holding that the city council, composed of the mayor and ten aldermen, did not have right under the charter of the city of Waco to remove one of its members.

The court erred in not holding the acts of respondents in the removal of relator null and void, because relator, as mayor, and two aldermen from each ward, as respondents, by virtue of section 4, article 4, of the charter of the city of Waco, composed the city council of the city of Waco, and no power is given to said city council to remove one of its members.

*Wm. W. Evans* and *Allen D. Sanford,* for appellees.—The right of amotion or removal from office of the mayor or any other officer of a city is a common law right incident to the corporation or governing body of same, and such right does not depend upon statutory authority. Richards v. Town of Clarksburgh, 20 Am. and Eng. Corp. Cases, 111, and authorities there cited.

Article 273, section 38, of the charter of the city of Waco is sufficient within itself to authorize the proceeding of the city council as taken in this case, and it was not necessary in order that the same should be made operative that a mode of procedure thereunder should be provided. Art. 273, sec. 38, Charter of City of Waco; Trigg v. State, 49 Texas, 645; Johnson v. City of Galveston, 11 Texas Civ. App., 469.

Article 273, section 38, of the charter confers upon the city council authority to remove any officer of the city for the causes and in the manner therein named. Art. 273, sec. 38, Charter of City of Waco; art. 274, sec. 38, Charter of City of Waco.

The seven members of the city council who signed the charges against appellant were not disqualified nor recused to try appellant.

The city council in the impeachment trial of appellant necessarily used discretion and judgment, and same was a judicial act which could not be inquired into or revised in a collateral proceeding in the courts. Lewright v. Bell, 94 Texas, 557; Teat v. McGaughey, 85 Texas, 485; De Poyster v. Baker, 89 Texas, 161; Screwman's, etc., Assn. v. Benson, 76 Texas, 555; Pace v. Ortiz, 72 Texas, 438; Ewing v. Cohen, 63 Texas, 482; Bledsoe v. International & G. N. Ry. Co., 40 Texas, 557; Arberry v. Beavers, 6 Texas, 457; Commissioner of Land Office v. Smith, 5 Texas, 478; Richards v. Town of Clarksburg, 20 Am. and Eng. Corp. Cases, 4 ed., 111; Dillon, Mun. Corp., 4 ed., secs. 835, 836; Dillon, Mun. Corp., 4 ed., secs. 255, 242; Angel & Ames on Corp., chap. 12; Murdock v. Academy, 12 Pick. (Mass.), 244; Glasscock v. Commissioner of Land Office, 3 Texas, 51; Auditorial Board v. Hendrick, 20 Texas, 60; Sherman v. Smith, 12 Texas Civ. App., 581; Bell v. Pike Co. Ct., 61 Mo. App., 173; Johnson v. City of Galveston, 11 Texas Civ. App., 469; Milliken v. City Council, 54 Texas, 391.

*Clark & Bolinger,* of counsel for appellee.—The provisions of the charter of Waco (article 273) are self-operative, and no legislative procedure

was necessary to be prescribed, either by ordinance or legislation, to give these provisions effect. The only requisites in such cases are: (1) Specific charges must be preferred against the officer. (2) The officer must have reasonable notice of the charges. (3) The time and place of the hearing must be fixed. (4) The officer must be present and be represented by counsel if he so desires; and (5) he must be entitled to introduce evidence in his behalf. When these essentials are observed the procedure can be regulated according to circumstances of each particular case. Trigg v. State, 49 Texas, 645; Throop on Pub. Officers, sec. 342; 1 Smith Mod. Law of Mun. Corp., secs. 199, 202; State v. Smith, 72 Conn., 572.

The seven aldermen who preferred the charges against appellant were not disqualified by reason thereof from participating in the removal proceeding. The action was not judicial but administrative in its character, as the board of aldermen could not under our constitution exercise judicial functions; and even if such proceeding was quasi judicial there exists no provision of law disqualifying these seven members of the council from participation in the proceeding, and the courts are powerless to engraft disqualifications beyond those prescribed by the Constitution and laws, even in cases of judicial hearing. People v. Com. Council of Auburn, 85 Hun, 601; State v. Com. Council of Superior, 90 Wis., 612; People v. District Court, 6 Colo., 534; Carter v. City of Durango, 16 Colo., 534; Throop on Pub. Officers, secs. 609, 617; People v. Wheeler, 21 N. Y., 82; People v. Kingston Com. Council, 101 N. Y., 82; Taylor v. Williams, 26 Texas, 583; King v. Sapp., 66 Texas, 520; McFaddin v. Preston, 54 Texas, 406.

An office is not a vested right, neither is it property in its legal acceptation, nor is it protected by constitutional provisions as to "privileges and immunities." Every officer accepts office with "all" legal provisions as to his removal therefrom, and necessarily consenting thereto, if he should be found guilty of such acts as may bring him within the discipline of the removing authority. Trigg v. State, 49 Texas, 645.

Even had not express authority been granted by the terms of the charter to the board of aldermen to remove the mayor, such power was inseparably incident to all corporations at common law; and the governing body of the corporation, for the protection of the public interests and safety, had an inherent right to remove an offending member or officer in a proper case, subject to review in a court of competent jurisdiction, and by a proceeding authorized by law. 1 Dillon, Mun. Corp., 4 ed., sec. 240; 1 Smith, Mod. Law Mun. Corp., secs. 167, 200; State v. Walbridge, 119 Mo., 383; Richards v. Town of Clarksburg, 20 Am. and Eng. Corp. Cases, 111.

BROWN, ASSOCIATE JUSTICE.—This is a certified question from the Court of Civil Appeals for the Third Supreme Judicial District. The statement and questions are as follows:

"This is a mandamus suit brought by J. W. Riggins against the

members of the city council of the city of Waco and Allan D. Sanford, the acting mayor of said city, by which Riggins seeks to be restored to the office of mayor, from which he has been removed by the city council.

"The District Court rendered judgment refusing to grant the relief sought, and Riggins has appealed. Among other questions presented for decision are two material questions, which the Court of Civil Appeals desires to certify to the Supreme Court for decision, and by way of explanation the following statement is made:

"The city of Waco is a municipal corporation, chartered by a special law enacted by the Legislature, which charter contains the following, among other articles:

"'Art. 4. The municipal government of the city shall consist of a city council, composed of the mayor and two aldermen from each ward, a majority of whom shall constitute a quorum for the transaction of business, except at call meetings for the imposition of taxes, when two-thirds of a full board shall be required, unless herein otherwise specified.'

"'Art. 7. The above named officers (except City Treasurer, who shall not be considered within the meaning of this act an officer) shall be elected by the qualified electors of said city, as hereinafter provided, and shall hold their offices for two years, and until the election and qualification of their successors. * * *'

"'Art. 35. The city council shall be composed of the mayor and aldermen provided for by this act. The mayor shall be president of the council, and in case of a tie on any question, he shall give the casting vote.'

"'Art. 36. At the first meeting of each new council, or as soon thereafter as practicable, one of the aldermen shall be elected president pro tem., who shall hold this office for one year.'

"'Art. 37. In case of the failure, inability or refusal of the mayor to act, the president pro tem. shall perform the duties and receive the compensation of the mayor.'

"'Art. 87. The city council shall have power, from time to time, to require other and further duties of all officers whose duties are herein prescribed, and to define and prescribe the powers and duties of all officers appointed or elected to any office under this act whose duties are not herein specially mentioned, and fix their compensation.'

"'Art. 273. The city council shall have power to remove any officer for incompetency, corruption, misconduct or malfeasance in office, after due notice and an opportunity to be heard in his defense.'

"'Art. 274. In addition to the foregoing power of removal, the city council shall have power, at any time, to remove any officer of the corporation elected by them, by resolution declaratory of its want of confidence in said officer, provided that two-thirds of the aldermen elected vote in favor of said resolution.'

"In September, 1902, while J. W. Riggins was occupying the office

of mayor of the city of Waco, to which he had been duly elected, seven of the ten members of the city council signed and presented to the council written charges against said Riggins, embracing nine specifications, some of which, in the judgment of this court, charge him with corruption, misconduct and malfeasance in office. The charges referred to were in the form of a resolution, declaring Mayor Riggins guilty of incompetency, corruption, misconduct and malfeasance in office in the several particulars specified in the nine separate charges and specifications contained in the resolution. The resolution was so framed as that its adoption would operate as a removal of Riggins from the office of mayor.

"After due notice and the appearance of Mayor Riggins in person and by attorneys, the council proceeded to try him upon the charges so preferred, Ben C. Richards, the mayor pro tem., presiding; and, by a vote of seven to two, found him guilty of all the charges and removed him from the office of mayor. However, all this was done over the objection and protest of Riggins, who then presented the same objections that are presented here and involved in the questions hereinafter certified.

"We also deem it proper to state that the same members of the city council who preferred the charges against Riggins voted to sustain them, and the other members who were present voted against his removal. It was not shown that the city council, by ordinance or otherwise, prescribed any mode of procedure for the removal of officers.

"The questions hereby certified are properly raised and presented for decision, are material, and their decision is necessary for the final disposition of the appeal.

"With the foregoing explanation and statement, the following questions are certified to the Supreme Court for decision:

"1. As against officers elected by the people, and not by the city council, is article 273 of the city charter self-executing, and did the city council, by force of that article or the common law, have authority and jurisdiction to try and remove appellant from the office of mayor? If it be held that the council had jurisdiction, then,

"2. Were the seven aldermen who preferred the charges against the mayor qualified to sit as members of the council and try him upon the charges? Or, by reason of having prepared and filed the charges, were such members of the council disqualified from trying him, and if so, was their action in finding him guilty and removing him from office absolutely void?

"In addition to the authorities cited in the briefs, the following are referred to as having some bearing:

"On the first question: Odell v. Wharton, 87 Texas, 173, and Warner Elevator Co. v. Maverick, 88 Texas, 489.

"On the second question: Stockwell v. Township Board of White Lake, 22 Mich., 341; People v. Common Council, 85 Hun (N. Y.),

601; In re Ryers, 72 N. Y., 1; Newcome v. Light, 58 Texas, 141; Armstrong v. Taylor & Elmore, 87 Texas, 598."

We answer the first question in the affirmative.

The appellant claims that under article 273 of the charter of Waco the city council had no jurisdiction to try the mayor, for the following reasons:

First. Because the phrase, "any officer," as used in said article, means the same as "any officer" in article 274; that each of them refer to officers elected by the city council and do not embrace officers elected by the voters of the city. The following clause of article 274 clearly distinguishes the officers mentioned therein from those named in the preceding article: "In addition to the foregoing power of removal, the city council shall have power, at any time, to remove any officer of the corporation elected by them." The terms of article 273 embrace all officers of the city, whether elected by the people or by the council, but by its provisions no officer can be removed by the council, except for one of the causes named and after trial; but article 274 of the charter confers authority upon the council to remove officers elected by it by a resolution declaring want of confidence in such officer, which differences show that article 273 embraces officers elected by the voters of the city.

Second. Because article 273 of the city charter confers the power of removal upon the city council as a body, which was composed of a mayor and aldermen, all of whom must act in the execution of the power; that the mayor could not act in the trial of himself and the council could not act without him, therefore the council could not try the mayor. There is authority to sustain the contention, but it is unnecessary for us to discuss the question, because it is determined by the charter and by subdivision 5 of article 3268, Revised Statutes: "The following rules shall govern the construction of all civil statutory enactments . * * *: 5. A joint authority given to any number of persons or officers may be executed by a majority of them unless it is otherwise declared." By the terms of the charter the council of the city of Waco was composed of a mayor and ten aldermen, and at the first meeting of each new council the aldermen were required to elect from their number a president pro tem., whose duty is prescribed by article 37 of the charter in the following language: "In case of the failure, inability or refusal of the mayor to act, the president pro tem. shall perform the duties and receive the compensation of the mayor." By article 4 of the charter it is provided that a majority of the council shall constitue a quorum for the transaction of business. By these provisions of the charter it will be seen that it was not contemplated by the Legislature that the city council should act as a whole in the transaction of business, or that the mayor should at all times be present and perform the duties of his office, and that he might be disqualified to preside in some cases. The term "inability," as here used, embraces disqualification, or disability, on account of interest in the subject of the action.

Webster's Dic., word "inability." The mayor being interested, the president pro tem. would preside in his absence, and a majority of the city council, thus organized, constituted a quorum which could transact all business that might come before the body.

Appellant contends with much earnestness that article 273 does not, of itself, furnish authority upon which the city council could proceed to try the mayor of the city, because it provides no mode of procedure. In other words, it is claimed that the article is not self-acting. This language in article 273, "after due notice and an opportunity to be heard in his defense," is very comprehensive and is pregnant with the idea of charges preferred, specifying the grounds upon which a removal is to be made, due notice to the accused, with the right to cross-examine the witness produced against him and to furnish testimony to exculpate himself from the charges, which would secure the constitutional right of a fair and impartial trial. These are strongly implied by the language of the act, and that which the law implies is as binding as if written in the body of the act. Suth. Stat. Const., sec. 334; United States v. Babbit, 1 Blk., 61.

When power to perform an act is conferred by the Legislature upon a body of officers and no procedure is specified, the law will imply authority to do whatever is proper in the execution of the power consistent with the right of the accused to a fair and impartial hearing. State v. Walbridge, 119 Mo., 383; Armatage v. Fisher, 74 Hun, 173; People v. Higgins, 15 Ill., 110; State v. Walker, 68 Mo. App., 117; In re Eaves, 30 Fed. Rep., 21.

It is insisted that the city council should have adopted by ordinance or resolution a method of procedure before entering upon the trial, and that, without some rules expressed in the charter or provided by the council, there was no authority for the council to make the removal. In the case of Armatage v. Fisher, before cited, the court states the law upon this point in the following terms: "Assuming that the common council has, in any event, power to remove the president, we are unable to see that any rule as to the course of procedure was necessary to be adopted prior to such removal. In other words, if the defendants have the power to remove the plaintiff, they can do so as well without the adoption of a new rule as with it."

And in the case of State v. Walker, before cited, the court say: "It is contended by relator that since the council had not passed an ordinance regulating the manner of impeachment and removals, as authorized by said section 11, it could not resolve itself into a court of impeachment. It is a sufficient answer to this to say that by the provisions of said section 11 is conferred the power to remove all elective officers for cause, and yet, while there are no means or measures whereby the removals may be accomplished as therein provided, or by any ordinance passed in pursuance thereof, yet the grant of power by the section carried with it all necessary incidental powers, without which the grant would be ineffectual. The general rule is that where a grant of

power is given, all the means necessary to effectuate the power pass as incidents to the grant." State v. Walbridge, 119 Mo., 396. Differently stated the contention is, that the council might have prescribed rules to govern its own action, but could not have done the same things when not formulated into rules. We do not see the force of this contention. If the council proceeded properly, without a rule, the result was the same as if the method had been embodied in an ordinance. State v. Smith, 72 Conn., 575. We are of opinion that there was ample authority in the terms of article 273 to enable the city council to make the removal of the mayor if they found him guilty.

To the second question we reply, that the aldermen who signed and presented the charges against appellant were not thereby disqualified to participate in the trial of the accused. The council when sitting for the purpose of trying the accused did not constitute a court, but was an administrative body, and the power to remove officers was administrative power to be used for the purpose of maintaining discipline and good order in the management of the business of the city. It is true that by the terms of the law the proceeding was required to be conducted in a manner judicial in character, but this does not necessarily constitute the body a judicial body, nor subject it to the rules which would be prescribed for a court, either in its procedure or as regards the qualification of its members. State v. Common Council, 90 Wis., 619; State v. Hawkins, 44 Ohio St., 98; Donahue v. Will Co., 100 Ill., 94. The grant of power to the council to remove the officers of the city imposed upon the members of that body the duty to see that such officers, when charged with the offenses named, should be arraigned, tried, and if guilty, removed. By preferring the charges against Mayor Riggins the aldermen did not become parties to the proceeding, and had no personal or pecuniary interest in the matter. The act was simply a discharge of a duty in which the public was more interested than they. People v. Wheeler, 21 N. Y., 82; State v. Council of the City of Superior, 90 Wis., 612; State v. Smith, 72 Conn., 572; Andrews v. King, 77 Me., 234; People v. Common Council, 85 Hun, 607. In the case last cited, the charges were preferred by members of the council who took part in the trial, and the court speaking of their qualifications said: "These members of the common council had no pecuniary interest in the result of the proceeding, and were not in any sense parties to it further than to discharge the duty imposed upon them by law. We must hold that the common council had jurisdiction, and that the authority conferred upon it by the statute in relation to the subject matter has been pursued in the mode required by law in order to authorize them to make the determination." That case was criticised in People v. Board of Trustees, 39 N. Y. Sup., 607, which announces the contrary doctrine, but we are of opinion that the reasoning in the former case is much more satisfactory and consistent with sound principles than the latter.

In Andrews v. King, the mayor of the council having made the charges against the party to be tried, did not sit in the trial. The court held that he was not disqualified by reason of having made the charges, therefore the council could not act without him, because the authority to remove was given to it as a whole and could not be exercised by a part of the body. The court said: "It was not improper for the mayor, as a chief executive magistrate of the city, required to be vigilant and active in causing the laws of the State to be enforced, to formulate the charges, even suo motu. In his supervision over the conduct of officers, it may be his duty to do so." In State v. Council of Superior, 90 Wis., 612, the charges were preferred against the mayor by an alderman, but the question of disqualification was not discussed. The same is true of State v. Smith, 72 Conn., 572.

However, if we apply the rule prescribed by article 5, section 11, of the Constitution of this State for judges of the courts, the aldermen who made the charges would not be disqualified, because they were not interested in the proceeding in a personal or pecuniary sense. In fact, the aldermen, after making the charges, had no more interest in the proceeding, personally, than those who did not sign the charges. Taylor v. Williams, 26 Texas, 587. If the rule claimed should apply, then the principle upon which it is based would prevent the prosecution before the council of any public officer, because if the charges should be presented by a person, not a member of the council, it would be necessary for that body to examine them and to determine whether there was sufficient cause to justify the prosecution and granting permission to file the charges would involve as much consideration of the merits as to formulate and present the accusation.

Counsel claims that appellant was entitled to a fair and impartial trial, and enters into a discussion of the facts to show that he did not have such a trial at the hands of the council, but no such question is certified to this court, and we can only say upon the certificate that the aldermen were not disqualified merely by the act of formulating and presenting the charges against the mayor.