STATE EX REL. HAVILAND, Relator, *v.* BEADLE, County Clerk, Respondent.

(No. 2,939.)

(Submitted October 29, 1910.   Decided November 5, 1910.)

[111 Pac. 720.]

Elections—Nomination by Petition—Officers—"Judicial Officers."
    1.   Under the Constitution, Article IV, section 1, dividing the powers of government into the executive, legislative and judicial departments, and Article V, sections 1, 9, 11, 16, 17, vesting the legislative authority in the General Assembly, making each house a judge of the election and qualifications of its members, with power to expel a member, and providing that the governor and other state and judicial officers shall be liable to impeachment, and Article VIII, section 1, vesting the judicial power in the senate, sitting as a court of impeachment, in the supreme court, district courts, etc., a state senator is a member of the legislative department, though the senate, when sitting as a court of impeachment, is a court exercising judicial functions, with power to judge the law and the evidence, and the term "judicial offices" in Laws 1909, chapter 113, requiring nominations for judicial offices to be made by petition only as provided by Revised Codes, section 524, does not include a senator, the term "judicial officers" being limited to judges of the supreme and district courts, justices of the peace, and judges of other inferior courts.

ORIGINAL application for writ of mandate by the state, on the relation of W. H. Haviland, against M. Kerr Beadle, as county clerk of the county of Silver Bow, to require respondent to omit from the official ballot names of candidates for state senator nominated by political convention. Motion to quash alternative writ sustained, and proceedings dismissed.

*Messrs. Roote & Murray,* in behalf of Relator, submitted a brief. *Mr. Murray* argued the cause orally.

In behalf of Respondent, *Mr. T. J. Walker, Mr. J. B. Kremer* and *Mr. J. V. Dwyer* submitted a brief. Oral argument by *Mr. Walker* and *Mr. Kremer.*

MR. JUSTICE SMITH delivered the opinion of the court.

The relator filed his petition for an alternative writ of mandate, reciting therein that he has heretofore filed with the respondent, as county clerk and recorder, a certificate in due form, nominating him as an independent or nonpartisan candidate for the office of state senator for Silver Bow county; that the Democratic, Republican, Labor, and Socialist parties in that county have made nominations for the same office by and through political conventions, which nominations have all been certified to the respondent clerk and recorder, who declares his intention of placing the names so certified upon the official ballot for the election to be held on November 8th next, in the columns wherein will appear the names of the candidates of the respective political parties under their proper headings; that the office of state senator is a judicial office, and, under and by virtue of Chapter 113 of the Session Laws of 1909, nominations for that office can only be made by petition in the manner provided by section 524, Revised Codes; that none of the other candidates for senator have been so nominated, and their names should not appear upon the official ballot; that the district court of Silver Bow county has refused the relief which he seeks; and he therefore prays that a writ of mandate issue

requiring the respondent to omit from the official ballot all names of candidates for state senator nominated by political convention, and to place thereon the names of only such candidates for that office as have been nominated by petition. An alternative writ was issued, which has been met by a motion to quash, on the part of the respondent. The matter has been submitted for final determination, no question of fact being in issue.

The contention of the relator is that a nomination for state senator is a nomination for a "judicial office," within the meaning of sections 1 and 2 of Chapter 113 of the Laws of 1909, which read as follows:

"Section 1. Hereafter all nominations for judicial offices shall be made only in the manner provided by section 1313 of the Political Code of the state of Montana.

"Section 2. No officer, authorized or required by any statute of this state to file any papers or certificates reciting the nomination of candidates for public office, shall receive for filing, or place on file, any certificate or paper reciting the nomination of any candidate for any judicial office except such nomination be made pursuant to the provisions of said section 1313 of the Political Code."

Section 1313 of the Political Code of 1895 is now section 524, Revised Codes, and reads as follows: "Candidates for public office may be nominated otherwise than by convention or primary meeting in the manner following:

"A certificate of nomination, containing the name of a candidate for the office to be filled, with such information as is required to be given in certificates provided for in section 522 (1311) of this chapter, must be signed by electors residing within the state and district, or political division in and for which the officer or officers are to be elected, in the following required numbers:

"The number of signatures must not be less in number than five per cent of the number of votes cast for the successful candidate for the same office at the next preceding election whether

the said candidate be state, county, township, municipal or any other political division or subdivision of state or county; but the signatures need not all be appended to one paper.    Each elector signing a certificate shall add to his signature, his place of residence, his business and his business address.    Any such certificate may be filed as provided for in the next preceding section of this chapter, in the manner and with the same effect as a certificate of nomination made by a party convention or primary meeting.''

To quote the language of the learned counsel for the relator, ''the. meaning of the term 'judicial office,' as used in the Act of 1909, is the crucial question to be determined.''

The supreme court of Washington, in *State* v. *Womack*, 4 Wash. 19, 29 Pac. 942, said: ''The departments of the government provided for in our state Constitution, like most state constitutions, are divided into three general classifications, *viz.*, the executive, judicial, and legislative; and, when an officer is appointed or elected under our system of government, he comes within one of these classes.    Judicial offices are those which relate to the administration of justice, and the term has a meaning so well and so universally understood that a  technical definition is entirely unnecessary.    The legislative offices are as well understood as relating to the enactment of laws.''

Mr. Justice Clifford, of the supreme court of the United States, in the case of *Fitzpatrick* v. *United States*, 7 Ct. of Cl. 290, 13 Wall. 568, 20 L. Ed. 707, said: ''Offices may be and usually are divided into two classes—civil and military.    Civil offices are also usually divided into three classes—political, judicial, and ministerial.    Political offices are such as are not immediately connected with the administration of justice, or with the execution of the mandates of a superior.    Judicial offices are those which relate to the administration of justice.  *  *  *  ''

Chief Justice Hawley of Nevada, in *Esmeraldo County* v. *District Court*, 18 Nev. 438, 5 Pac. 64, said: ''The duties [relating to the division of a county] performed by the district judge in pursuance of the statute did not become judicial acts

42 Mont.—12

merely because they were performed by a judicial officer. It has often been decided that the action of a judicial officer in regard to matters which are exclusively executive or legislative in their nature * * * cannot be reviewed by *certiorari.*"

Section 1, Article IV, of the state Constitution reads: "The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this Constitution expressly directed or permitted."

Section 1, Article VIII, reads: "The judicial power of the state shall be vested in the senate sitting as a court of impeachment, in a supreme court, district courts, justices of the peace. and such other inferior courts as the legislative assembly may establish in any incorporated city or town."

Section 17 of Article V provides that the governor and other. state and judicial officers, except justices of the peace, shall be liable to impeachment for high crimes and misdemeanors, or malfeasance in office, and designates that judgment of removal from office and disqualification to hold office may be given.

Section 1 of Article V provides that the legislative authority of the state shall be vested in a legislative assembly consisting of a senate and a house of representatives.

Section 9, Article V, provides that each house shall judge of the election, returns, and qualifications of its members. Section 11 provides that each house shall have power, with the concurrence of two-thirds, to expel a member.

In the case of *State* v. *Kenney,* 9 Mont. 223, 23 Pac. 733, it was said: "This court is mindful of the constitutional provision which places the power to try the ultimate right to the office [of representative] in another *forum, i. e.,* in the legislative house wherein the person claims a seat; that body, and that alone, having the plenary jurisdiction to try the ultimate right to the office. * * * "

All of the strictly judicial powers of this state are vested in courts. There can be no question that the senate "sitting as a court of impeachment" is a court—a body exercising judicial functions—and that the senators, when so organized into a court of impeachment, are exercising judicial functions. They are judges of the law and the evidence. A most interesting argument on this subject has been called to our attention by counsel for the relator. It is that of the Honorable William M. Evarts before the senate of the United States sitting as a court for the impeachment of President Andrew Johnson. (2 Impeachment of Andrew Johnson, p. 275.) It is equally clear that a senator, as such, is a member of the legislative branch of the government. The supreme court of Washington has said in the *Womack Case, supra,* that when an officer is elected he falls into one of the classes mentioned in the Constitution. Mr. Justice Clifford said that civil officers are usually either political, judicial, or ministerial. Under this classification a senator, as such, must be classed as a political officer, as distinguished from a judicial officer. Chief Justice Hawley said that the duties performed by a district judge did not become judicial acts merely because they were performed by a judicial officer. The reverse of this proposition ought to be equally true, *i. e.,* that the mere performance of a single judicial act will not in itself constitute the person performing the act a judicial officer within the full meaning of that expression.

But the solution of the question may be found in the Constitution itself. That "revered document" provides that the governor and other state and judicial officers shall be liable to impeachment, and if found guilty may be removed from office. The words "state officers," as therein employed, do not include members of the legislative assembly. (*Hiss* v. *Bartlett,* 3 Gray (Mass.), 468, 63 Am. Dec. 768; 29 Cyc. 1414.) Members of the legislative assembly are not liable to impeachment. (*In re Speakership of House of Representatives,* 15 Colo. 520, 25 Pac. 707, 11 L. R. A. 241; see, also, *State ex rel.* v. *Gilmore,* 20 Kan. 551, 27 Am. Rep. 189.) The reasoning in the latter

case is to the effect that, whereas each house of the legislature is the judge of the election and qualifications of its own members, the defendant could not be removed from office by a district court under a statute authorizing the removal from office of any state, district, city, county, or township officer. The court also in the course of the opinion said: "This power [of judging] is not exhausted when once it has been exercised, and a member admitted to his seat. It is a continuous power and runs through the entire term. At any time, and at all times, during the term of office, each house is empowered to pass upon the present qualifications of its own members."

If, then, as provided in our Constitution, each house is the sole judge of the qualifications of its own members to hold office, and a senator cannot be removed by impeachment, but may be expelled by the senate, it must follow that the framers of the Constitution did not regard a senator as either a state or judicial officer, within the meaning of those terms as employed in section 17 of Article V, *supra*. He cannot be a judicial officer because the Constitution expressly provides that a judicial officer may be removed by impeachment, and a senator cannot be so removed. The governor and other state and judicial officers can be removed only by impeachment. The constitutional provision is exclusive. Therefore the term "judicial officers," found in the Constitution, does not include senators. Any other construction of the constitutional words would result in a conflict between the provisions of section 9 and section 17 of Article V, and the legislative assembly undoubtedly so understood when section 8972, Revised Codes, was enacted. In this section the exact words of section 17, Article V, of the Constitution are repeated. This being so, it must be presumed that the legislative assembly of 1909 employed the phrase "judicial officers" in the same sense as that in which it was used in section 17 of Article V of the Constitution, and section 8972, Revised Codes.

And there is another view of the case which appeals strongly to us as having an important bearing upon the question. Article V. of the Constitution is entitled: "Legislative Department." Section 16 of that Article provides that the sole power of im-

peachment is vested in the house of representatives, and that impeachment shall be tried by the senate sitting for that purpose. The senate cannot initiate the proceedings; the house must perform that function—whereupon the senate tries the impeachment. It will thus be seen that it is the legislative assembly, constituting the legislative department of the state government, to which is delegated, by the Constitution, the sole power of impeachment from its initiatory step to the final judgment. In other words, the jurisdiction to conduct and determine impeachments is, by the Constitution, lodged solely in the legislative department. A senator or representative, by virtue of the fact that he may act in impeachment proceedings, does not thereby lose his character or *status* as a member of the legislative assembly. It is only because of the fact that he is such senator or representative that he may act in such proceedings. This view was also entertained by the supreme court of Colorado, as shown by the case of *In re Speakership, etc., supra.*

This disposes of the question presented. But there is a general consideration which may, we think, be properly adverted to. It is not to be doubted that the legislature of 1909, in enacting the law we have been discussing, was actuated by a desire to remove the judges of our courts from the realm of partisan politics. The office of senator is necessarily a political office. No such consideration has any force as applied to a senator, although, perchance, he may be called upon to sit in the high court of impeachment.

We think the conclusion we have reached, by limiting the words "judicial officers" to judges of the supreme court, district courts, justices of the peace, and judges of other inferior courts, carries into effect the exact intention of the legislature.

The motion to quash is sustained, and the proceedings are dismissed, with costs to the relator.

*Dismissed.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY did not hear the argument and takes no part in the foregoing decision.