DIFFIE v. COWAN, Mayor, et al.
No. 4343.

Court of Civil Appeals of Texas. Texarkana.
Dec. 13, 1932.

Rehearing Denied Dec. 29, 1932.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Travers Crumpton, of Texarkana, for appellees.

WILLSON, Chief Justice (after stating the case as above).

Appellant insists it was error to sustain the motion to dissolve, because he says (1) appellees at the time had not filed an answer to the petition for the writ; (2) the Legislature could not confer on the mayor and aldermen power it undertook to confer on them to suspend, try, convict, and remove elective officers of the city; (3) if the Legislature had such power it did not intend to confer it so far as aldermen were concerned; and (4) if the Legislature could and did confer such power, it did not appear in the charges preferred against appellant that he had done any of the things specified in the charter as furnishing ground for removing him from his office as alderman. The matters specified will be briefly discussed in the order they are stated above.

1. The motion to dissolve the writ containing, as it did, demurrers and exceptions to appellant's petition and a denial of any equities pleaded therein, we think it constituted a sufficient "answer" within the meaning of article 4658, R. S. 1925, providing that such motions "may be heard after answer filed." Worm v. Wood (Tex. Civ. App.) 223 S. W. 1016.

2. By the terms of the charter (Sp. Acts 1907, c. 104), power to try and remove any officer "for [quoting] malfeasance, nonfeasance or misfeasance in office, or for wilful violation of any of the ordinances of the said city, or for habitual drunkenness or for corruption or for wilful or habitual neglect of the duty or upon conviction of a felony," was conferred upon the city council, composed of the mayor and five aldermen, three of whom constituted a quorum. Sections 8, 58. Such trial was to be had at a time fixed by the mayor after charges in writing against the officer had been filed with him (section 59), and after ten days' service of a copy of the charges was had on the officer (section 60). The mayor and aldermen were to constitute a court to try and determine the charges (section 63), and were to have power by the concurrence of three-fifths of its members to suspend the accused officer pending an investigation of the charges against him. In the event of such suspension, the council was empowered to "appoint [quoting] some suitable person to discharge the duty of such officer so accused." Section 61. As we understand the law applicable, the Legislature acted within the limits of power it possessed when it authorized the city council to hear and determine, in the manner pointed out, charges preferred against any of the city's officers, including alderman. Riggins v. Richards, 97 Tex. 229,

77 S. W. 946; Callaghan v. Tobin, 40 Tex. Civ. App. 441, 90 S. W. 328; Bonner v. Belsterling (Tex. Civ. App.) 137 S. W. 1154.

The contention to the contrary, as to aldermen, is on the theory that it appeared the intention of the Legislature was to limit the exercise of power it conferred to officers of the city other than alderman. Certainly the intention to make such a limitation was not indicated by the language used in the provision of the charter conferring the power. Section 58. That language was that "any officer" of the city might be tried and removed for malfeasance, etc., in the way provided. It is argued that giving such meaning to the provision of the statute would present "the anomaly that it was the purpose of the Legislature to give a court created by it power to try and remove from office one of its own members," and attention is called to the fact that by section 64 other provision was made for trying the mayor. It is argued that such special provision and not making such provision for trying aldermen indicated the Legislature did not intend that an alderman should be tried by the mayor and the other aldermen. As we see it there is little, if any, force in the argument. The special provision for trying the mayor we think owed its existence in the charter to the necessity of providing some officer other than him with whom charges against him could be filed, who could fix a date for the trial, and who could give proper notice thereof to the mayor. Those duties, when the charges were against another officer than the mayor, by the terms of the charter as shown above, devolved upon the mayor. No other (article 5995, R. S. 1925) provision than that in section 58 above referred to existed in the charter or in the general laws of the state for trying and removing aldermen guilty of conduct like that denounced in the charter and charged against appellant by the city attorney. Certainly, we think, it should not be held, in the face of unambiguous language used by the Legislature indicating to the contrary, that that body did not intend the provision it made for the trial and removal of any officer should apply to aldermen. Riggins v. Richards, 97 Tex. 229, 77 S. W. 946, where it was held that the words "any officer" used in a charter granted the city of Waco, meant all officers, whether elected by the people or by the city council.

4. It was declared in the charter that no person in the service of the city should "directly or indirectly [quoting] use his authority or official influence to compel or induce any person in the public service of the city of Texarkana to pay or promise to pay any political assessment, subscription or contribution" (section 70); and it was provided that a violation of said inhibition should be punished by a fine of not less than five nor more than one hundred dollars (section 73). The

charges preferred against appellant are set out in the statement above. It will be noted that they were that appellant, while an alderman, attempted to extort money from members of the fire department to be used as campaign funds. If appellant did that, we think he thereby violated provisions of the charter referred to, and was guilty of malfeasance in office within the meaning of section 58 of the charter.

It follows from what we have said that we think the judge did not err when he sustained appellees' motion and dissolved the writ.

It may be added, that if the conclusion reached by us that the power the city council invoked was power lawfully conferred upon it is correct, the action of the judge in dissolving the writ was warranted by the rule that "courts of equity [quoting from the opinion of the court in Callaghan v. Tobin, 40 Tex. Civ. App. 441, 90 S. W. 328, 330] will not interfere to protect a person from removal from office by a man or body of men to whom the power to remove is given by law"; and see Riggins v. Thompson, 30 Tex. Civ. App. 242, 70 S. W. 578; and Miles v. Logan (Tex. Civ. App.) 265 S. W. 421.

The judgment is affirmed.

LEVY, Justice.

The pointed question for consideration is that of whether or not the power resides in the city council of the city of Texarkana, a city strictly under special charter or legislative authority, to try and remove an alderman from office upon the several charges. The settled precedents have determined that if a city council, as a special court or as a unit of the city corporation, may exercise the power to remove a municipal officer who is duly elected for a definite tenure of office, as is an alderman, such power must have been provided by statute or by the terms of the particular city charter. Proceedings based upon the assumption of such power would be illegal and void. Under rules long adhered to grant of power, as herein involved, of removal from office is to be strictly construed, and whatever is not given in unequivocal terms is understood to be withheld. 43 C. J. § 192, p. 195. If the authority does not clearly appear in the provisions of the law or of the particular city charter, then no such authority nor grant of power can be implied or held to exist. 43 C. J. § 186, p. 188.

The statute of the state expressly provides: "Art. 5991. The mayor and aldermen of any incorporated town or city may be removed from office for official misconduct," etc. Article 5992, that, whenever "any alderman" is charged by sworn complaint with any act which may be "cause for his removal," then "The mayor and aldermen of such town or city, except the aldermen against whom complaint is made, shall constitute a court to try

and determine the case." Article 5993, that, whenever such complaint is made against "the mayor," then "A majority of the aldermen shall constitute a court to try and determine the complaint against the mayor, and they shall select one of their number to preside during such trial." Article 5995, that "The provisions of this title * * * shall not apply to any town or city except such as are incorporated under the general laws of this State." The charter of the city of Texarkana (Sp. Acts 1907, c. 104), which is not a city incorporated under the general laws of this state, expressly provides: "Sec. 58. Any officer of said city may be tried by the city council which is hereby granted power for such purposes, and removed from office for malfeasance," etc. Section 59, that, "Before any officer created by this charter shall be removed from office, written charges shall be first preferred against him, stating in a substantial manner the charges against him." Section 64, that, whenever charges are preferred against "the mayor," then the "aldermen shall be and constitute a court to try and determine the said charges against the mayor," etc.

Considering the phraseology of the state law, and the city charter provisions, and the line of differences, which is permissible under the rules of construction of grants of power and of use of words employed in the grant, it is not clear and certain that power was conferred, or intended to be conferred, upon the city council as a special tribunal, or as a unit of the city corporation, of trial and removal from office of an alderman. The city charter does not contain any section or provision which in anywise specifically mentions by name an "alderman," as it does "the mayor," as one subject to trial and removal from office by the "city council." Seemingly, either by intention, or in the case of omission merely, an "alderman" has not been included in the charter provision by name as one made subject to removal by the city council. It is noticeable that the power of removal from office of the accused official other than "the mayor," as it is provided for in the city charter, is conferred upon the "city council." Under the express terms of the city charter (section 8) the "city council" is made to consist and shall be composed "of the mayor of said city and five aldermen." The entire council, the mayor, and the five aldermen, is constituted the tribunal, and must hear and determine the charges preferred, although "the concurrent vote of three-fifths of all the aldermen" may pronounce a valid judgment of removal. Unless otherwise expressly provided, the power so conferred could not legally be exercised by the aldermen independently of the mayor, nor by the mayor and less than "three-fifths of all the aldermen." The provision differs from that providing for the trial of "the mayor," for when he is required to

appear and answer to a charge he is not a constituent element of the body nor a part of the tribunal to act. It is "the aldermen" only (section 64) that compose the court or tribunal for removal of "the mayor." And the particular provision further widely differs from the phraseology of the state law. The state law, as noted, expressly provides that the alderman "against whom complaint is made" shall not be a constituent element nor a part of the "court to try and determine the case." Rev. St. 1925, art. 5992. The plain inference from the context seems to indicate with sufficient clearness that it was contemplated only the removal by the city council of those officers exercising purely executive or ministerial functions and not aldermen.

It is further evident, it is believed, that the charter provisions were not intended to clothe the city council with power of removal of an alderman, although its terms include "any officer of said city." Section 58. It is provided that (section 59) "Before any officer created by this charter" shall be removed from office written charges shall be preferred against him. After the charges have been preferred against "any officer of the said city," then (section 62) a day "for a trial thereon" shall be set by the mayor, and notice shall be given "the accused and all of the aldermen of said city to be present at such time." A distinction is evidently recognized and intended to be between the words, as used, of "officers" and of "aldermen." The charter provisions specially denominate an "alderman" and give that title to him as a member of the city council, involving functions purely of legislation. An "officer" is used in peculiar distinction to denominate and include all persons in the service of the city who have to do with the execution or administration of the laws, whether elective or appointive. In requiring, as the section mentioned does, "all of the aldermen of said city" to be notified to be present for the trial of the accused "officer of the said city," it was plainly contemplated the removal of all officers other than aldermen. Manifestly an accused alderman could not be regarded as by intendment to be one of the court or tribunal which was to decide his own case. The principle of public policy would prohibit it. It is a matter of the highest moment, and a fundamental idea running through and pervading the whole system of judicature and of widespread popular opinion that the rule of disqualification on account of self-interest in the result should extend to and be applied to persons or tribunals exercising functions of a quasi judicial nature.

There is distinguishment in the particular charter provision between this case and Riggins v. Richards, 97 Tex. 229, 77 S. W. 946. There the two charter provisions with other provisions considered together were regarded as intended to include and apply to a mayor in general classification of an officer subject to removal. A mayor may more reasonably be included in the general classification of an officer, as his duties are chiefly executive and administrative.

### On Motion for Rehearing.

BLALOCK, Chief Justice.

Upon a careful consideration of the record it is concluded that the determinative question is that of whether or not the city council, as a special court, has the power under the terms of the city charter of the city of Texarkana, Tex., as it now reads, to try and remove from office an alderman who is elected for a definite tenure of office. Under rules long adhered to, grant of power of removal from office is to be strictly construed, and whatever is not given in unequivocal terms is understood to be withheld. 43 C. J. § 192, p. 195. This rule applies with particular force to a city incorporated by special act of the Legislature. If the authority does not clearly appear in the provisions of the law or of the particular city charter, then no such authority or grant of power can be implied or held to exist. 43 C. J. § 186, p. 188.

The city council of Texarkana is a legislative body. Its members, the aldermen, are the legislators of the city. It has long been held and accepted as settled law that a legislator is not a "civil officer," the speaker of a legislative assembly is not a "state officer," the members of state Legislatures are not "officers of the state," subject to impeachment, and this will hold true even though the State Constitution may fail to expressly give the legislative body control over its own members. In re Speakership, 15 Colo. 520, 25 P. 707, 709, 11 L. R. A. 241; State ex rel. Haviland v. Beadle, 42 Mont. 174, 111 P. 720. May it not be said with equal force that a member of the city's legislative body, an alderman, does not come within the general classification, "any officer" of the city? The failure of the charter to make the city council the judge of the qualifications of its members may be unfortunate; but that consideration may not control a proper construction of its provisions.

Considering the phraseology of the city charter, it is evident that the provisions were not intended to clothe the city council with power of removal of an alderman, although the terms include "any officer of the city." The charter provisions specially denominate an "alderman" and give that title to him as a member of the city council, involving functions purely of legislation. An "officer" is used in the charter in peculiar distinction to denominate and include all persons in the service of the city who have to do only with the execution or administration of the laws. There is clear distinguishment made between

the three different classifications of city officials, of "Mayor," "Alderman," and "officers of the City." Each exercise, and are intended to exercise, different functions and duties.

I concur in the views expressed by Associate Justice Levy in the minority opinion heretofore handed down by him. A majority of the court concurs and agrees that the motion for rehearing be granted, and the judgment dissolving the temporary injunction be reversed, and the cause remanded. It is accordingly so ordered.

SELLERS, J., does not agree, but is of the opinion, as before, that the judgment should be affirmed.